## SMITH v. GALVESTON–HOUSTON ELECTRIC RY. CO. (No. 8453.)*

(Court of Civil Appeals of Texas. Galveston. June 21, 1924. Rehearing Denied Oct. 9, 1924.)

**1. Railroads ⬅➡307(4) — Facts held not to raise issue of negligence in failing to have watchman, electric bell, or gate.**

Facts showing that crossing was not obstructed, except by poles and sign, *held* not to raise issue of negligence on part of railroad in failing to have watchman, electric bell, or gate at crossing.

**2. Railroads ⬅➡307(4) — Watchman, electric bell, or gate unnecessary, in absence of statute, unless crossing unusually dangerous.**

Electric railroad need not maintain watchman, electric bell, or gate at crossing unless it is unusually dangerous, in absence of statutory requirement.

**3. Railroads ⬅➡350(11)—Question of negligent speed over crossing one of fact.**

Question of negligence in speed at which electric car is operated over highway crossing outside of unincorporated city is one of fact, and, unless facts show situation such that ordinary minds might differ as to whether rate at which train was operated was negligent, that issue is not raised.

**4. Railroads ⬅➡316(2)—Operation of electric car over crossing at 60 miles an hour not negligence.**

Operation of electric car over unobstructed highway crossing in country at 60 miles an hour was not negligence.

**5. Railroads ⬅➡93—Statute held not to require consent of county authorities before placing interurban tracks across public road.**

Vernon's Sayles' Ann. Civ. St. 1914, art. 6735, does not require interurban railway companies to obtain consent of county authorities before placing tracks across public road.

**6. Railroads ⬅➡337(1)—Failure to obtain consent of authorities to put interurban track across road held not proximate cause of collision.**

. If interurban railway was required to obtain consent of county authorities before placing tracks across public road, failure to obtain such consent could not be regarded as proximate cause of collision with motor vehicle at crossing, as trespass upon highway would con-

stitute nuisance of which only public could complain.

**7. Master and servant** ⚖══354 — **Evidence of payment of compensation by employer admissible in action against third party for injuries.**

In action by truck driver against railroad for injuries at crossing, it was proper to admit evidence with reference to payment of plaintiff's wages by his employer during disability, being pertinent under Workmen's Compensation Act (Vernon's Ann. Civ. St. Supp. 1918, art. 5246—1 et seq.) as bearing on measure of damages.

**8. Appeal and error** ⚖══1052(5)—**Admission of evidence, if erroneous, held not to require reversal in view of verdict.**

Admission of evidence with reference to payment of plaintiff's wages by his employer during disability in action against third party for injuries, if erroneous, would not authorize reversal where verdict was for defendant on merits.

**9. Evidence** ⚖══471(17)—**Testimony that one did all he could to stop car held statement of fact.**

Statement of motorman of electric car that he did all he could to stop car and avoid injury was statement of facts rather than expression of opinion.

**10. Appeal and error** ⚖══1050(3)—**Admission of evidence as to contributory negligence harmless, where only issue was as to duty under last chance doctrine.**

Admission of evidence of witness that he could not see why man in auto, if he had been paying any attention at all, could not see and hear approaching car at crossing, material only on question of plaintiff's negligence, was harmless, where issue under undisputed evidence was only whether motorman should have discovered plaintiff truck driver in place of peril in time to have avoided injuring him.

Graves, J., dissenting.

Error from District Court, Galveston County; J. C. Canty, Judge.

Suit by Lawrence L. Smith against the Galveston-Houston Electric Railway Company. Judgment for defendant, and plaintiff brings error. Affirmed.

Stewarts, of Galveston, A. J. De Lange, of Houston, and Brantly Harris, of Galveston, for plaintiff in error.

G. B. Ross and Terry, Cavin & Mills, all of Galveston, for defendant in error.

PLEASANTS, C. J. This suit was brought by plaintiff in error Smith against the railway company to recover damages in the sum of $25,000 for personal injuries alleged to have been caused by the negligence of the defendant.

Plaintiff was injured in a collision between a motor truck which he was driving along a public highway of Galveston county, and an electric car which defendant was operating on its railway track across said highway.

Plaintiff alleged that defendant was a trespasser upon said highway at the time of the collision, it not having theretofore obtained the consent of Galveston county to place its track and operate its cars thereon. Negligence was alleged in the failure of the defendant to properly guard the public from the danger of collision at said crossing, and in the manner in which the car was operated at the time of plaintiff's injury.

The grounds of negligence presented on this appeal are thus alleged in the petition:

"(a) The defendant was negligent in failing to have at said crossing an electric bell, gate, or other devise to warn persons traveling along said public road and across defendant's tracks, of the approach of its cars, said crossing being on the main Galveston-Houston road, a muchly traveled thoroughfare, said crossing being obstructed and rendered more dangerous, due to trolley poles which obstruct the view and make it difficult to see approaching cars on said track, and said track and said crossing being rendered more dangerous due to the angle at which said track crosses said road.

"(b) The defendant was negligent in operating its car, which struck the truck and injured the plaintiff, over said crossing, at an excessive rate of speed, to wit, 50 to 60 miles an hour. * * *

"(d) Defendant was negligent in failing to keep a watchman at said crossing, which was a muchly used and dangerous crossing, in order to warn persons who had occasion to pass over the track of the defendant at that point of the approach of its cars, said crossing being on the main Galveston-Houston road, a muchly traveled thoroughfare, said crossing being rendered more dangerous due to trolley poles which obstruct the view and make it difficult to see approaching cars on said tracks, and said crossing being rendered more dangerous due to the angle at which said track crosses said road.

"(e) That defendant was negligent, in that it discovered plaintiff in a position of peril or danger, on or near to, and approaching, the track, in time to have stopped the car or lessened its speed and have avoided the collision, and it failed to stop the car or control same in time to avoid said injury, although it could have done so with the means at hand, in the exercise of ordinary care."

Defendant answered by pleas in abatement, general demurrer, general denial, and by way of special answer alleged that the plaintiff was guilty of contributory negligence in the following manner:

"(1) That plaintiff was driving an automobile truck approaching said crossing, and approached said crossing and went upon the track immediately in front of defendant's cars without looking or listening for the approach of said car.

"(2) That plaintiff was driving an automobile truck immediately before said accident, and approached said crossing at an excessive and dangerous rate of speed.

⚖══For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

"(3) That plaintiff took no care for his own safety in that he approached and went upon said crossing immediately in front of one of defendant's cars without watching where he was going, and without looking for, any approaching car, and in fact generally acted as if he were asleep, and that had plaintiff looked or listened, or exercised the slightest degree of care for his own safety, he would have seen or heard said approaching car, and consequently avoided the accident which took place.

"(4) That plaintiff in approaching the intersection of the highway upon which he was driving, with the track of this defendant, the crossing being at grade, did not at some point nearer than 30 feet from said track, reduce the speed of the motor truck or vehicle which he was driving to a speed not exceeding six miles per hour; which acts defendant alleged proximately caused the collision and resulting injuries to the plaintiff."

At the conclusion of the evidence the trial court submitted the case to the jury upon special issues, the only ground of recovery submitted being the alleged negligence of the operators of the car in failing to use proper care to prevent the collision after they discovered the peril of the plaintiff.

Upon this issue the jury found in favor of the defendant. On the return of this verdict, judgment was rendered in favor of the defendant, that plaintiff take nothing by his suit.

The appeal is based upon the following propositions:

"No. 1. There was sufficient evidence to require the submission to the jury, the issue of negligence of defendant in failing to have a watchman, electric bell, or gate at the crossing where the collision occurred.

"No. 2. There was sufficient evidence to require the submission to the jury, the issue of negligence of the defendant in operating its cars under the circumstances, at the rate of speed it was operating same at the time it neared the crossing at which the collision with the truck driven by plaintiff occurred.

"No. 3. The evidence did not show conclusively that the plaintiff was guilty of contributory negligence in any particular, or that any contributory negligence of plaintiff was the proximate cause of plaintiff's injury.

"No. '4. The court erred in excluding, over objections and exceptions of plaintiff, evidence offered by plaintiff, to the effect that the collision between plaintiff's truck and defendant's interurban car occurred at the intersection of a public highway of Galveston county, Tex., and that the defendant had no permission nor authority from the county commissioners' court of Galveston county, nor from any other authority, to lay its rails or right of way on or across said public highway, nor to operate its interurban cars on or across same, said testimony being relevant and material to showing the rights of plaintiff and defendant, respectively, at the point where the collision occurred; said evidence showing that defendant was a trespasser upon said public highway and liable absolutely for all damage and injury to plaintiff occurring by reason of said trespass.

"No 5. The court erred in admitting in evidence, over objections and exceptions of plaintiff, all evidence with reference to the payments by Black Hardware Company to plaintiff during his disability and subsequent to his return to work, amounts equal to his wages, and compensation prior to the injury, and payments in behalf of plaintiff in doctor's bills, hospital bills, and similar expense accruing by reason of injury to plaintiff, as the undisputed evidence shows that such amounts were made as advances to plaintiff, charged against his account, and evidence of such payments was immaterial, irrelevant, incompetent, and prejudicial to plaintiff, as said payments were not made on behalf of defendant or for defendant's benefit, and said defendant was not entitled to any offsets on account of said payments.

"No. 6. The court erred in allowing defendant's witness Stelter, the motorman of defendant's interurban car, to testify over objections and exceptions of plaintiff, that he did all he could to stop the interurban car and avoid injury to plaintiff after discovering the peril of plaintiff, said evidence being immaterial, irrelevant, and incompetent, and the mere conclusion and opinion of the witness on a matter of fact and of law, and the very issues in controversy in the case, same being solely within the province of the jury.

"No. 7. The court erred in admitting in evidence, over objections and exceptions of the plaintiff, the statement made by witness Zolbe, as follows: 'I cannot see why a man in an auto, if he had been paying any attention at all, could not see and hear the car.' Such evidence being immaterial, irrelevant, and incompetent to prove any issue in this cause, and such evidence being but a conclusion of the witness, such witness not having shown himself to have sufficient knowledge to qualify him to render his opinion, the evidence being a conclusion of fact and of law by the witness on the very issue to be decided by the jury, viz., contributory negligence of the plaintiff at the time of the injury complained of, and negligence of the defendant in the particulars set forth in plaintiff's requested instruction."

The crossing at which the collision occurred is in the open prairie across the bay, and some 8 or 10 miles beyond the limits of the city of Galveston, and 3 miles beyond the railway station at Virginia Point. There is not a house or a tree in the vicinity of the crossing. Vehicles going along the highway and cars operated on the railway are in view of those traveling in both conveyances from Virginia Point to, and for a.mile or more beyond, the crossing. The railway crosses the highway at an angle of 41 degrees. The railway runs practically east and west, and the highway north and south. Such being the relative positions of the railway tracks and the highway, it follows that a person approaching the crossing on the highway from the south as he nears the crossing might be so far in advance of a car approaching from the east that he could not see the car without turning his head and looking somewhat to his rear. It was also shown that at certain points on the highway near the crossing the view of a car approach-

ing from the east would be obstructed by the alignment of the poles conveying the electric wires of the railway company. The distance of the car from the crossing where this obstruction occurred would vary with the distance the traveler on the highway would be from the crossing when he looked down the track. There was also evidence that a sign standing between the highway and the railway track on the east side of the highway and about 40 feet distant therefrom, and when directly in the line or between a person on the highway and a car on the railway track, would obstruct the view of the car.

At times there is much travel on this highway. It is the main highway between Galveston and Houston, and the intermediate towns between these cities, and is daily used by quite a number of people, and in the summer season on the last days of the week and on holidays many vehicles pass thereover. There is no evidence that at the time this accident occurred there was a number of persons using the highway; on the contrary, the plaintiff was the only person shown to have been on the highway in the vicinity of the crossing.

[1, 2] We agree with the trial court that these facts do not raise the issue of negligence on the part of appellee in failing to have a watchman, electric bell, or gate at the crossing to warn travelers on the highway of the approach of cars on the railway track. There was nothing in the situation disclosed by the evidence to render the crossing specially or unusually dangerous, and in the absence of any statutory requirement of such precautions against possible injury to persons using the highway, such duty would not arise unless it was shown that the crossing was more than ordinarily dangerous. We think the evidence wholly fails to establish this fact. As we view the evidence, the conditions surrounding the crossing at the time plaintiff went upon it were not such as to make it specially or unusually dangerous, and an ordinarily prudent person would have had no special or unusual difficulty in discovering the approach of the car before going upon the crossing.

Such being the situation, we think the ruling of the trial court that this issue of negligence was not raised by the evidence is sustained by all of the authorities. Tisdale v. Railway Company (Tex. Com. App.) 228 S. W. 133, 16 A. L. R. 1264; Ry. Co. v. Pearson (Tex. Civ. App.) 224 S. W. 708; Ry. Co. v. Zumwalt (Tex. Civ. App.) 226 S. W. 1080; Hines v. Hodges (Tex. Civ. App.) 238 S. W. 349.

[3] The rule announced in the cases cited applies with equal force to the question of negligence on the part of defendant in the speed at which the car was being operated as it approached the crossing. We have no statutory regulation of the speed at which railways may operate cars over their tracks, except the requirement of city ordinances as to the speed of trains when operated within city limits. In the absence of such statute, the question of negligence in the speed at which a railway train or car is operated outside of an incorporated city is one of fact. Unless the facts in a particular case show that the situation was such that ordinary minds might differ as to whether the rate of speed at which the train was operated was negligent, that issue is not raised.

[4] The speed at which the car that collided with plaintiff's automobile was being operated as it approached the crossing is estimated by the witnesses at from 30 to 60 miles an hour. This was not shown to be an unusual rate of speed. The evidence shows nothing in the situation and circumstances surrounding the crossing which suggests that ordinary prudence would have required the operators of the car to have approached the crossing at a less rate of speed, other than the presence of the plaintiff on the highway. There certainly could have been no negligence in running the car over the crossing at a speed of 40 miles an hour, the view of the highway for miles on either side of the crossing being unobstructed, and the track being in good condition, if no one had been on the highway at the time.

The undisputed evidence shows that the motorman saw plaintiff as he approached the crossing, and long before he reached a position of danger. The jury found that when the motorman realized plaintiff's danger he used proper care to prevent the collision. The finding that plaintiff was not in peril up to the time that the motorman applied his brakes necessarily involves the finding that the car was not being run at a rate of speed which would render the crossing dangerous to persons approaching it.

The entire question of negligent operation of the car so far as plaintiff was concerned was submitted to and passed upon by the jury in answering the issue of discovered peril. No complaint of the manner in which this issue was submitted, nor of the verdict of the jury thereon, is made by plaintiff.

As the case is presented by this record, the issue of contributory negligence, as such, is not raised. We think the undisputed evidence and findings of the jury acquit the defendant of negligence. If the plaintiff was negligent, such negligence was the sole and not the contributing cause of his injury, and it is unnecessary for us to decide whether the evidence convicts him of negligence as a matter of law.

[5, 6] We do not think article 6735 of Vernon's Sayles' Civil Statute can be construed as requiring interurban railway companies to obtain the consent of county authorities before placing their tracks across a public road; such consent is only required when the railway track is constructed "along and

upon" a public road. If, however, the consideration of the track across the road could be held unlawful, such trespass upon the highway could not be regarded as the proximate cause of plaintiff's injury, but at most would constitute a nuisance of which only the public could complain.

[7, 8] There is no merit in the objection to the admission of the evidence with reference to payment of plaintiff's wages by his employer during his disability caused by his injury. The evidence was pertinent, under the provisions of the Workmen's Compensation Act (Vernon's Ann. Civ. St. Supp. 1918, art. 5246—1 et seq.) in fixing the amount of plaintiff's recovery if he had been found entitled to any recovery. If inadmissible, this evidence could have no possible effect upon the verdict of the jury, and could not authorize a reversal of the judgment.

[9, 10] The testimony of the witnesses Stelter and Zolbe complained of in propositions 6 and 7, before set out, if inadmissible, was harmless. The witness Stelter testified fully as to what he did to stop the car and avoid the injury after he discovered plaintiff's peril. His further statement that he did all he could to stop the car and avoid the injury is, we think, a statement of facts rather than the expression of an opinion. The statement of the witness Zolbe, who was present at the time of the collision, and saw the plaintiff as he approached the crossing, that, "I cannot see why a man in an auto, if he had been paying any attention at all, could not see and hear the car," was material only upon the question of plaintiff's negligence, and as that issue under the undisputed evidence and finding of the jury became immaterial, the evidence, if inadmissible, was harmless.

The majority of the court are of opinion that judgment should be affirmed, and it has been so ordered.

Justice GRAVES dissents from the conclusion of the majority upon the question of whether the evidence raises the issue of negligence in the speed at which the car was operated.

Affirmed.

GRAVES, J. (dissenting). Over the protest of plaintiff in error, the trial court reduced the issues for the jury to a single one involving only discovered peril, and this court, by the affirmance, approves that action. I dissent, believing that, under the pleadings and evidence, the question raised as to the railway company's primal negligence in the manner of operating the car was not so swallowed up in or superseded by the new duties imposed under the doctrine of discovered peril as to have become eliminated from the cause. Indeed, the evidence tended strongly to show that the very high speed of the car, which the jury might well have found negligent in the circumstances, was itself the cause of plaintiff in error's being placed in peril, and that it continued without material interruption until the collision, thereby directly bringing about the injury.

A legal anomaly seems to me to arise when you say that one's negligence in the first instance may itself bring about and persist unabated through the subsequent development termed discovered peril, in such way as to furnish a proximate cause of an injury, and yet that it has nothing to do with this result because superseded by the latter condition and the rules of law appertaining to it.

After having properly pleaded the matter, plaintiff in error unsuccessfully requested the trial court to submit these two issues to the jury: "(1) 'Was the defendant, Galveston-Houston Electric Railway Company, and its servants, negligent in operating its car under the circumstances, at the rate of speed it was operating same at the time it neared the crossing at which the collision with the truck, driven by plaintiff, occurred?' (2) Was such negligence, if any, a proximate cause of the injury?"

I think the refusal to submit these inquiries was error. The estimates made by the witnesses as to the speed of the car as it approached the crossing ranged between 30 and 45 miles per hour, instead of 30 to 40 miles, as recited in the majority opinion, but the practically undisputed testimony is that it would have been impossible to stop it within 300 feet if going as fast as the minimum of these estimates, 30 miles an hour

Now the great weight of the evidence further is that the operatives ran the car up to within 300 feet or less of the crossing before applying the brakes at all or making any effort to even slow it down; that is, to a point where it could not have been stopped at the rate of speed it was running in time to avoid the collision, discovered peril or no discovered peril after that time. How, then, can it still be said that this high rate of speed had nothing to do with the accident, when the evidence further showed that the crossing was a dangerous one, approached at an angle of 41 degrees, and with at least some obstructions from the sign, and the row of telegraph poles interfering with the view of each other of those converging upon it as shown here?

The situation on the ground was unusual and fraught with danger, notwithstanding the fact that the country in the vicinity was open prairie as stated in the majority opinion. It further correctly recites that the telegraph poles and the large sign, according to his distance and position, obstruct the view of a person approaching the crossing on the highway from the south. This highway was the main thoroughfare between Houston and Galveston, and the evidence does show that at least one other automobile was using it near this crossing about or near the time of this accident. Furthermore, it is undisputedly shown that there was a hood on plaintiff in error's truck over where he

was sitting, and that, owing to the relative positions of the two converging conveyances and the angle between them, it was necessary for him to turn and look backward in order to see an interurban car approaching the intersection from Galveston. The collision occurred in July, on Saturday about noon, the very time of the day, week, and year when the travel along there was shown to be usually extremely heavy. The defendant in error was shown to have known all of these conditions, being familiar with the lay of the land, accustomed to operate its trains many times daily over the scene, and its operatives having admitted seeing the truck driver in this instance all along for many hundreds of yards down the road.

In this state of the evidence, while agreeing that the question of negligence in the speed at which the car was being operated was one of fact, it seems to me there was ample room for ordinary minds to have concluded that the 30 to 45 mile dash so close upon that crossing was negligent; indeed, that under such conditions the railway company might reasonably have anticipated that this or some like accident might and probably would occur as a result of such high speed, and if so the issue should have gone to the jury. Washington v. Ry. Co., 90 Tex. 314–320, 38 S. W. 764.

In this connection, while there is no attack made in this court on the text of the trial court's charge on discovered peril, it contains affirmative error, as is apparent from the portions of it I have underscored as follows:

"In determining your answer to the foregoing special issue No. 1, submitted to you, you will be guided by the following instructions: If you find from the evidence that the motorman in charge of the interurban car *actually knew* that the plaintiff was in danger, that is to say, that the motorman *actually knew* that the plaintiff was unaware of the approach of the interurban to the crossing, and if you further find that the motorman realized, under all the circumstances then attending, that plaintiff would probably go upon the crossing and a collision take place, and that the motorman, *after having such knowledge*, if you find he had the same, and so realizing, if you find he did so realize, could have prevented the collision by the use of means at hand, consistent with the safety of the interurban car and its passengers, and failed to do so, then you will answer special issue No. 1 in the affirmative, that is, "Yes," but unless you find the facts so to be, you will answer said issue in the negative, that is, "No."

This is not the law of discovered peril; on the contrary, it is the duty of the trainmen to act if the peril is only probable; they cannot wait until they actually know the man is in danger, but their duty arises if it reasonably appears to them, or they can reasonably infer, that he is coming into danger. Ry. Co. v. Finn, 101 Tex. 511, 109 S. W. 918; Ry. Co. v. Dumas (Tex. Civ. App.) 149 S. W. 547; Higginbotham v. Ry. (Tex. Civ. App.) 155 S. W. 1025; Hines v. Arrant (Tex. Civ. App.) 225 S. W. 770; Ry. Co. v. Ford (Tex. Civ. App.) 237 S. W. 655; Electric Co. v. Antonini (Tex. Civ. App.) 152 S. W. 841.

This erroneous instruction of the court but emphasizes what I think brought about a miscarriage of justice in this cause. With nothing before them except the discovered peril issue, the jury simply concluded (under some testimony from the operatives so tending) that the motorman did not actually know that the truck driver was oblivious of the approach of the interurban, and was going to attempt to cross the track until the car was within less than 300 feet of the crossing, and that he then did everything in his power, but it was too late to prevent the injury.

This result clearly indicates that the real cause of the accident, as at first indicated, lay in the rapid rate of speed at which the interurban car ran so closely up to the crossing. Surely after that appears, the mischief thereby done cannot be justly excused by simply shifting to the other foot, and saying that the operatives then for the first time actually knew and realized the man's peril, and unsuccessfully did everything in their power to avoid injuring him.

Neither was plaintiff in error shown to have been guilty of contributory negligence as a matter of law in his manner of approaching the crossing, or going upon it without looking or listening for a train. To say the most concerning it, if raised at all by the evidence, that question also was one for the jury. The court likewise failed to submit it, and plaintiff in error excepted. He directly testified that he did look and listen, and no one testified that he did not. Even a failure to look and listen is not of itself negligence as matter of law, to say nothing of the further inquiry as to whether or not, if negligence, it was also a contributing cause of the injury. Trochta v. Ry. (Tex. Com. App.) 218 S. W. 1038; Ry. v. Harrington, (Tex. Com. App.) 235 S. W. 189; Kirksey v. Traction Co., 110 Tex. 190, 217 S. W 139.

As stated, no issue or charge of any sort on contributory negligence was given. In such circumstances it was sufficient for plaintiff in error, in his written objections to the charge as given, to call attention to the omission, and request the submission of the matter, as the record shows he did. Foster v. Atlir (Tex. Com. App.) 215 S. W. 955; Moore v. Pierson, 100 Tex. 113, 94 S. W. 1132; Liddell v. Gordon (Tex. Com. App.) 254 S. W. 1098.

I agree with the conclusions of the majority on the questions not herein discussed. In my opinion the judgment should have been reversed and the cause remanded for trial on the negligence issues referred to.