## McMILLIAN et al. v. SIMS.
### No. 10407.

Court of Civil Appeals of Texas. Galveston.
Nov. 18, 1937.

Rehearing Denied Dec. 22, 1937.

Royston & Rayzor, of Galveston (Clarence S. Eastham, of Galveston, of counsel), for appellants.

Sadie Bevilacqua, Harris & Coltzer, and Geo. W. Coltzer, all of Galveston, for appellee.

CODY, Justice.

This case involves the question of the liability of the owner of a motor vehicle for injuries sustained by a gratuitous guest, under the provisions of article 6701b, R.S. 1925, as added in 1931, Vernon's Ann.Civ. St. art. 6701b.

Appellee, plaintiff below, alleged in substance that her husband, Hubert Roy Sims, on May 1, 1934, while returning to Galveston on the Galveston-Houston highway as a gratuitous guest on a truck belonging to appellant McMillian, which was being operated by appellant Merrill and which was filled with a load of gasoline, was burned to death when the gasoline exploded; that the appellants were guilty of negligence which proximately caused her husband's death, in four respects—(1) appellants were acting in heedless and reckless disregard of the rights of others, inclusive of appellee and her deceased husband in that Merrill was driving the truck, loaded with gasoline, while asleep; (2) in that the tanks on the truck were not secure, and were allowed to slide back and forth so as to sheer off a valve and allow the gasoline to escape, ignite, and explode; (3) in that the driver did not keep a proper lookout; (4) in that the driver carelessly permitted the truck to run into and strike a culvert on the edge of the highway.

Appellants answered, in addition to their general demurrer, special exceptions, and general denial, that deceased was riding in the truck at his own request, without compensation to appellants, and was well acquainted with the truck, and with its driver, and with the fact it was loaded with gasoline, and that he assumed the risk of the injuries he received; that the deceased was asleep when the truck caught fire and failed to keep a proper lookout for his own safety, and that this was failure to use ordinary care for his own safety, and constituted contributory negligence; that, further, the truck was in no manner defective, and was operated by a competent driver, and the injuries to deceased were not inflicted intentionally, nor by heedlessness nor reckless disregard of the rights of others; that appellants were not operating a public carrier, nor demonstrating a motor vehicle to a prospective purchaser and are therefore under article 6701b not liable.

On the trial it developed that deceased had a mother surviving him who was not made a party to the suit, and defendant moved that the cause be abated as all necessary parties were not before the court, which the court overruled. Appellants then asked leave to withdraw their announcement, and for the case to be continued as they then first learned of the existence of deceased's mother, who had not been made a party. Appellants further asked for continuance on the

ground of surprise that the court admitted evidence that appellee was the common-law wife of the deceased under the allegation that she was his legal wife. Such motion was overruled. Appellee, over appellants' objection, was permitted to file a trial amendment to the effect that the deceased contributed nothing to any member of his family other than appellee, and had no other dependents than herself. The court overruled appellant's motion for an instructed verdict, and submitted the case to the jury on the following special issues, which the jury answered as indicated:

"Special Issue No. 1.

"Do you find from a preponderance of the evidence that the gasoline truck in question ran into or against a culvert and was thereby wrecked?" Answered: "Yes."

"Special Issue No. 2.

"Do your find from a preponderance of the evidence that the defendant Robert Merrill was asleep at the time or immediately prior to the time said truck struck said culvert (provided, of course, you have found that the truck struck the culvert)?" Answered: "Yes."

"Special Issue No. 3.

"Do you find from a preponderance of the evidence that the fact, if it be a' fact, that the said Robert Merrill went to sleep while driving said truck on the occasion in question constituted on his part heedlessness or reckless disregard of the rights of others?" Answered: "Yes."

"By the term 'heedlessness or reckless disregard of the rights of others,' as used in the above issue, is meant more than the failure to use that degree of care which an ordinarily prudent person would use under the same or similar circumstances. It means acting in a rashly careless or indifferent manner and in disregard of the probable consequences of such acts as they may affect the rights of others."

"Special Issue No. 4.

"Do you find from a preponderance of the evidence that the fact, if it be a fact, that the defendant Robert Merrill went to sleep while driving said truck on the occasion in question was a proximate cause of the death of the said Hubert Roy Sims?" Answered: "Yes." (Definition omitted.)

"Special Issue No. 5.

"Do you find from a preponderance of the evidence that Hubert Roy Sims was himself asleep at the time of the accident?" Answered: "Yes."

"Special Issue No. 6.

"Do you find from a preponderance of the evidence that his being asleep at the time of the accident, if he was, constituted contributory negligence on the part of the said Hubert Roy Sims?" Answered: "No." (Definition omitted.)

"Special Issue No. 7.

"Do you find from a preponderance of the evidence that plaintiff, Golda Mary Sims, and the said Hubert Roy Sims mutually and unqualifiedly agreed and consented, the one with the other, to become then and from thence forward husband and wife?" Answered: "Yes."

"Special Issue No. 8.

"Do you find from a preponderance of the evidence that the said Golda Mary Sims and the said Hubert Roy Sims, pursuant to such agreement (provided you have found such agreement was made), lived together and cohabited as husband and wife, the term 'cohabit' meaning living together, claiming to be married, in the relationship of husband and wife?" Answered: "Yes."

"Special Issue No. 9.

"Do you find from a preponderance of the evidence that the said Hubert Roy Sims and the plaintiff, Golda Mary Sims, during the time they lived together and cohabited as husband and wife (provided you have so found), held each other out to the public as husband and wife?" Answered: "Yes."

"Special Issue No. 10.

"Do you find from a preponderance of the evidence that the death of the said Hubert Roy Sims was not the result of an unavoidable accident?" Answered: "It was not the result of an unavoidable accident."

"An unavoidable accident is an event happening suddenly and unexpectedly and without fault or negligence on the part of any party thereto."

"Special Issue No. 11.

"What sum of money, if paid now in cash, will reasonably compensate the plaintiff for the pecuniary loss, if any, sustained by her through the death of the said Hubert Roy Sims?" Answered: "$10,000.00." (Definition omitted.)

Appellants object to the definition of "heedlessness or reckless disregard of the rights of others" given by the court in connection with special issue No. 3, above,

on the ground that the definition does not place sufficient burden of proof on appellee,, and places too great a burden of proof on appellants, and is not the correct definition of the rule by which appellants' liability is to be determined under article 6701b.

Section 1 of article 6701b is in this language: "No person transported over the public highways of this State by the owner or operator of a motor vehicle as his guest without payment for such transportation, shall have a cause of action for damages against such owner or operator for injuries, death or loss, in case of accident, unless such accident shall have been intentional on the part of said owner or operator, or caused by his heedlessness or his reckless disregard of the rights of others."

Of this statute it was stated in Napier v. Mooneyhan, Tex.Civ.App., 94 S.W.2d 564, 567: "Absent any knowledge of the source of the statute, we would readily reach the conclusion that the words were intended to connote substantially the same meaning as the term 'gross negligence' as the latter term is used in our Constitution and laws."

In other words, the Legislature has abolished the common-law obligation of an operator of a motor vehicle to exercise that degree of care for his gratuitous guest's safety which a reasonably prudent man would exercise under the same or similar circumstances. In doing this, Texas has followed the lead of Connecticut. In Aycock v. Green, Tex.Civ.App., 94 S. W.2d 894, 896, the court said: "The Connecticut authorities are deemed specifically in point, and controlling, in cases arising in Texas under our guest statute, because the statute of that state, it seems clear, was copied as the Texas statute upon the same subject, and it will be presumed that our Legislature adopted the construction placed upon the law by the courts of that state."

The Supreme Court of Error in Maher v. Fahy, 112 Conn. 76, 151 A. 318, held: " 'Heedless and reckless disregard of rights of others,' under the statute, constitutes 'wanton misconduct,' consisting of a reckless disregard of the just rights or safety of others in their lives, limbs, health, reputation, or property; or of the consequences of one's action."

In Ryan v. Scanlon, 117 Conn. 428, 168 A. 17, the Connecticut court said: " 'Gross negligence' is substantially and appreciably higher in magnitude than ordinary negligence. It is materially more want of care than constitutes simple inadvertence. It is an act or omission respecting legal duty of an aggravated character as distinguished from mere failure to exercise ordinary care. It is very great negligence or the absence of slight diligence or the want of even scant care. It amounts to indifference to present legal duty and to utter forgetfulness of legal obligations so far as other persons may be affected."

The definition of the trial court, complained of by appellants, is not justly subject to their criticism. For the jury is first instructed that the heedlessness and reckless disregard of the rights of others, inquired about in special issue No. 3, is more than failure to use the degree of care which an ordinary prudent person would use under the same or similar circumstances. That in itself is a pretty fair definition of gross negligence, considered negatively, or from the standpoint of what it is not. The court went further, however, and defined it positively; defined it as acting in a rashly careless manner, indifferent to the probable consequences of his acts as they might affect the rights of others. This is tantamount to giving a definition of gross negligence. It is clear that the Legislature did not intend by the statute to relieve the operator of a motor vehicle from liability for injuries he causes a guest passenger by an act of gross negligence.

The evidence before the jury practically compelled them to find that the driver of the truck went to sleep while driving, and warranted them in finding that this constituted heedlessness or reckless disregard for the rights of others, as defined by the court. We will not review the evidence in detail. But the facts given in evidence were that the driver was operating a Studebaker tank truck about 1 o'clock at night, having one main tank and two wing tanks, loaded with 900 gallons of gasoline. The deceased rode with the driver in the cab. They had left Houston on the return trip to Galveston around 12 o'clock midnight. Appellant Merrill signed this writing admitted in evidence: "State of Texas, County of Galveston

"My name is Robert Merrill. I live in Galveston County, Texas, and on April 31, 1934, I drove a Stan Tex oil and gasoline truck to the Refinery in Houston for

the purpose of returning with a load. Roy Sims was with me. We started on our return trip to Galveston after midnight, and I was very sleepy. Just out of Dickinson I remember an automobile blew its horn. I moved over to let them by. This is all I know before I was in the ditch trying to put out the flames from my clothing. I must have dozed off and hit the culvert because I have caught myself doing that before. It was so late and I was sleepy.

"Robert Merrill

"Witnesses:

"E. Gregory     residing at Rebecca Sealy Nurses Res.

"S. Otsuki     residing at Rebecca Sealy Nurses Res."

The evidence showed that the driver went to sleep at the refinery in Houston when his truck was loaded. That on previous trips he had stopped at Dickinson to drink coffee to keep him awake, but did not on this trip. He knew the deceased was asleep when they passed through Dickinson. It is hardly possible to yield to sleep without having premonitory symptoms of its approach, unless sleep is induced by drugs. In this case the driver had not been drinking. As stated in the case of Potz v. Williams, 113 Conn. 278, 155 A. 211, 212:

"This statute, in the aspect of it here presented, requires proof by a guest in an automobile seeking to recover from the operator of it that the accident was ' "caused by his heedless and his reckless disregard of the rights of others," and, in substance, that it constituted wanton misconduct which consisted of a reckless disregard of the just rights or safety of others in their lives, limbs, health, reputation, or property, or of the consequences of one's action.' * * *

" 'In any ordinary case, one cannot go to sleep while driving an automobile without having relaxed the vigilance which the law requires, without having been negligent. It lies within his own control to keep awake or cease from driving. And so the mere fact of his going to sleep while driving is a proper basis for an inference of negligence sufficient to make out a prima facie case, and sufficient for a recovery, if no circumstances tending to excuse or justify his conduct are proven.' * * *

" 'There are few ordinary agencies so fraught with danger to life and property as an automobile proceeding upon the highway freed from the direction of a conscious mind, and, because this is so, reasonable care to avoid such a danger requires very great care.' It is but the plainest common sense to recognize that there are circumstances under which the operation of an automobile upon the highway by one who is or should be aware of the likelihood that sleep will overtake him could reasonably be held to constitute reckless misconduct."

See, also, Blood v. Adams, 269 Mass. 480, 169 N.E. 412. Certainly what was said in Potz v. Williams, supra, loses nothing of its force when applied to a driver of a truck transporting 900 gallons of gasoline.

■ The admission in evidence of the statement signed by appellant Merrill, copied above, over the objection that it was not binding on appellant McMillian, that it was ex parte, and was a mere conclusion where it says, "I must have dozed and hit the culvert because I had caught myself doing that before," is here complained of. This complained of statement is in the form of a conclusion, rather than being in fact a conclusion. And when it is examined in the light of the fact that he awoke to find his clothes on fire and one ear burnt off, it seems an example of marked understatement. Its admission was not error. Smith v. Galveston-Houston Elec. Ry. Co., Tex.Civ.App., 265 S.W. 267; Houston & T. C. R. Co. v. O'Donnell, Tex.Civ.App., 90 S.W. 886. We fail to see how its being ex parte could affect its admissibility where the maker of it was on the witness stand to be examined on it.

■ The court did not err in permitting appellee to prove that she was deceased's common-law wife under the allegation that she was his legal wife. Where the proof is sufficient to establish a common-law marriage, the wife is a true de jure wife, and not a mere de facto one. See Melton v. State, 71 Tex.Cr.R. 130, 158 S.W. 550.

■ The mother of deceased, though not a party to the suit, filed a disclaimer of interest, and a release. The proof showed that the mother was not dependent on the deceased, and received nothing from him, and that the wife did. The mother is completely cut off from recovering damages for deceased's death. The court correctly refused to abate the suit. See Thurman v. Chandler, Tex.Civ.App.,

52 S.W.2d 315, reversed on other grounds in 125 Tex. 34, 81 S.W.2d 489; Greathouse v. Fort Worth & D. C. R. Co., Tex.Com.App., 65 S.W.2d 762.

We believe that the questions of contributory negligence and of assumed risk of the deceased, if they were in the case, were sufficiently submitted to the jury in special issues Nos. 6 and 10. The proof showed that the driver of the truck knew the deceased was asleep. "One does not assume a danger of which he has no knowledge or means of knowledge." El Paso Printing Co. v. Glick, Tex.Civ.App., 246 S.W. 1076, 1079; Id., Tex.Com.App., 263 S.W. 260. It is clear that the deceased was under no duty to stay awake to guard his safety against intentional injuries inflicted against him by any one. Neither do we believe it was the duty of the deceased to foresee the possibility that the driver might be guilty of gross negligence, and keep awake to guard his safety against such a contingency. It would have been a very different matter had deceased remained awake, and had noticed the driver was dozing and then did nothing.

Judgment affirmed.

Affirmed.

PLEASANTS, C. J., absent.