125 So.2d 66 (1960)
Jessie Wayne BLOUNT
v.
Louis J. BLOUNT and Southern Farm Bureau Casualty Insurance Company.
No. 5117.
Court of Appeal of Louisiana, First Circuit.
November 15, 1960.
Rehearing Denied December 19, 1960.
Certiorari Denied February 15, 1961.
*67 Taylor, Porter, Brooks, Fuller & Phillips, Robt. Vandaworker, Baton Rouge, for appellant.
Davis & Clesi, Baton Rouge, for appellees.
Before ELLIS, LOTTINGER, JONES, HERGET and LANDRY, JJ.
HERGET, Judge.
Suit was filed by Plaintiff to recover damages sustained by him while a guest passenger in a vehicle owned by Defendant, Louis J. Blount, Plaintiff's father, insured by Defendant, Southern Farm Bureau Casualty Insurance Company. Plaintiff sustained injuries when the vehicle, driven by his brother Glynn Frank Blount, ran into the side of a concrete bridge on the highway near Terrell, Texas.
An exception of no cause or right of action was filed on behalf of Southern Farm Bureau Casualty Insurance Company, the basis thereof being that inasmuch as the accident occurred in the State of Texas, Plaintiff would not have a right to proceed under LSA-R.S. 22:655, the Direct Action Statute, as by such Statute actions were restricted to accidents or injuries which occur in the State of Louisiana.
For written reasons assigned, the exception of no cause of action was sustained and Plaintiff's suit dismissed as to Southern Farm Bureau Casualty Insurance Company.
The case was then tried on its merits against the Defendant, Louis J. Blount, and, for written reasons assigned, judgment was rendered in favor of the Defendant and against Plaintiff, Jessie Wayne Blount, rejecting his demands at his costs.
Plaintiff and his younger brother had been given use of the vehicle and given permission by their father, Louis J. Blount, to drive from Baton Rouge, Louisiana to Keene, Texas, which is approximately five hundred miles distant from Baton Rouge. They left Baton Rouge on the evening of February 25, 1959 at a time between 6:00 p.m. and 9:00 p.m. and drove to Shreveport, Louisiana, during which time Glynn requested that he be permitted to drive the car and his brother, the Plaintiff, permitted him to do so. Upon their departure from Shreveport about 1:30 a.m. February 26, 1959 they picked up a hitchhiker who accompanied them for approximately thirty-five miles. At the time they stopped to permit the hitchhiker to alight, the Plaintiff got on the back seat of the car and went to sleep after telling his younger brother to awake him in the event that he, Glynn, should become sleepy. Upon reaching a point some 150 miles west of Shreveport while Glynn was still operating the automobile it ran into the side of a concrete bridge, in consequence of which both occupants were injured.
The question of liability is controlled by the substantive law of Texas, Cone v. Smith, La.App., 76 So.2d 46 and Mondello v. Pastiro, La.App., 78 So.2d 64. Furthermore, the parties to this suit, recognizing this principle of law, stipulated that the Texas Guest Statute and the Texas authorities interpreting it control the law of the case.
In Cone v. Smith, (supra), 76 So.2d at page 48, we find quoted the pertinent provisions of Article 6701b of Vernon's Ann. Civil Statutes of Texas, known as the Texas Guest Statute, as follows:
"`Liability for injuries to gratuitous guest in motor vehicle limited; public carrier and motor vehicle demonstrators excepted
"`Section 1. No person transported over the public highways of this State by the owner or operator of a motor vehicle as his guest without payment for such transportation, shall have a cause of action for damages against *68 such owner or operator for injuries, death or loss, in case of accident, unless such accident shall have been intentional on the part of said owner or operator, or caused by his heedlessness or his reckless disregard of the rights of others.'"
It is to be noted that this statute permits recovery by a guest in those circumstances (1) only where the guest passenger is able to prove that the accident resulted from the intentional act on the part of the owner or operator of the vehicle or (2) was caused by his heedlessness or (3) his reckless disregard of the rights of others. It therefore becomes essential that the Plaintiff prove by a preponderance of the evidence the cause of the accident, and that such cause resulted from the action of the driver within one of the three enumerated circumstances.
According to the evidence given by Glynn Blount, he testified that he remembered
"* * * getting sleepy, but I didn't think I was going to go to sleep.
"Q. And what is the last thing that you remember? A. Well, I remember leaning back and putting my heel up on top of the accelerator, you know, to be comfortable.
"Q. And then what is the next thing you remember? A. Waking up in the hospital." (Tr. of test., page 35)
And, at page 36, in response to the question:
"Q. Why didn't you stop? A. Well, I didn't see no, I didn't think I was going to go to sleep, so I just kept driving."
On cross examination, at page 37:
"Q. Glynn, didn't you tell the insurance company that investigated this case that you did not know whether you went to sleep or not while you were driving? A. Yeah, I believe I did at the time."
On page 43:
"Q. Did you have any idea that you might fall asleep or that an accident might occur? A. No, sir, I didn't have any idea."
On March 23, 1959 Glynn Frank Blount gave a statement to an adjuster for the insurance company describing the accident, which he admitted while a witness on the trial of the case:
"* * * I don't remember too much about it because I was knocked unconscious in the accident and stayed out about a week. I do know we hit a bridge, but I don't know how fast we were going when we hit it. I don't know whether I went to sleep at the wheel or not, but we hit the side of the bridge about middleways of the bridge. * * *"
(Pages 39 and 40 of the tr. of test.)
Further, on page 42:
"Q. Glynn, if you had had any idea that you might fall asleep while you were driving the car this night you would have waked your brother up, or stopped, the car, or done something to prevent it, wouldn't you? A. Yes, sir."
In 28 A.L.R.2d § 32, page 60, we find:
"Rule That Mere Fact of Falling Asleep Is Not Gross Negligence.
"The numerous cases in which courts have considered the question whether falling asleep while operating a car is in itself gross negligence are almost unanimously to the effect that the fact of falling asleep while driving is sufficient to establish a prima facie case of ordinary negligence only, but that it is not sufficient to take the case to the jury on the question of the operator's gross negligence. Stated differentially, if plaintiff in an action based on gross *69 negligence shows merely that the operator of the motor vehicle fell asleep while driving, a directed verdict for the defendant is proper. The following cases support this rule either expressly or by necessary implication."
The case of McMillian v. Sims, Tex.Civ. App., 112 S.W.2d 793 is cited in support of this view.
At page 62, 28 A.L.R.2d § 33, we find:
"Rule That Foreseeability of Falling Asleep Constitutes Test of Gross Negligence.
"While the mere fact of falling asleep while driving does not give rise to an inference of gross negligence, the courts unanimously agree that the driver of an automobile who falls asleep while driving is grossly negligent if he had some prior warning of the likelihood of his going to sleep.
"In accordance with this general rule, the fact that the driver at the wheel fell asleep was held in the following cases, under the circumstances involved, to constitute such misconduct as to amount to gross negligence within the meaning of the applicable guest statute."
A reference to the case of Napier v. Mooneyham et al., Tex.Civ.App., 94 S.W.2d 564, 568, in which case it is stated that it was a case of first impression interpreting the Texas Guest Statute, the Court held:
"The immediate question is whether the testimony of Agnes Mooneyham to the effect that just before the collision the defendant seemed to `pass out' or `go to sleep' showed conclusively that the injury was not caused by `his heedless and his reckless disregard for the rights of others' as comprehended in the foregoing interpretation of the statute. We think if the fact of his going to sleep or `passing out' was the only basis for the claim of liability that perhaps the contention would be correct. This would be supported by the decision in Kaplan v. Kaplan, supra, [213 Iowa 646, 239 N.W. 682.] But we think the question of intoxication and other elements enter into consideration. If there were pre-existing facts, as we think there was evidence tending to show, which charged the defendant with the knowledge, or duty to know, that he was likely to `pass out' or `go to sleep,' then an issue of fact would be raised. A case in point is Potz v. Williams, 113 Conn. 278, 155 A. 211, 212. In that case the court said: `It is but the plainest common sense to recognize that there are circumstances under which the operation of an automobile upon the highway by one who is or should be aware of the likelihood that sleep will overtake him could reasonably be held to constitute reckless misconduct. * * * Whether in a particular case this is so must depend upon the circumstances, and especially upon the extent to which the driver realizes or ought to realize that there is a likelihood of sleep overtaking him.' Upon these considerations we overrule the contention upon this point that the court should have instructed a verdict."
It is to be noted that the Texas Guest Statute herein involved is similar to the one of Connecticut.
Counsel for the Plaintiff maintains that under the decision of McMillian v. Sims, Tex.Civ.App., 112 S.W.2d 793 recovery was allowed in circumstances similar to the factual situation involved herein. In the case of Cone v. Smith, La.App., 76 So.2d 46, at page 51 the Court in reviewing the McMillian case made the following observation:
"The Texas Guest Statute was involved in McMillian v. Sims, Tex.Civ. App., 1937, 112 S.W.2d 793, wherein the gratuitous guest was killed while riding on a truck of the defendant, loaded with gasoline. There the facts were the tanks on the truck were insecure and were allowed to slide back and forth as a result of which a valve was sheared *70 off, allowing the gasoline to escape and explode when the defendant's driver fell asleep and permitted the truck to run into a culvert on the edge of the highway. What caused the jury to find the driver grossly negligent was his persistent course of indifference to the insecurity of the tanks, concerning which he had full knowledge as well as the danger resulting therefrom."
Counsel for Plaintiff is of the opinion that the conclusion reached by our learned brethern of the Second Circuit in the Cone case (supra) as to the interpretation of the McMillian case is not justified. A review of the McMillian case (supra), however, shows that the driver of the truck went to sleep while driving and under such circumstances as warranted the jury in finding such act constituted heedlessness or reckless disregard for the rights of others as defined in the Texas Guest Statute. It is to be noted that in the case as part of the evidence there was offered the statement of the driver of the truck in which he stated [112 S.W.2d 796]:
"`My name is Robert Merrill. I live in Galveston County, Texas, and on April 31, 1934, I drove a Stan Tex oil and gasoline truck to the Refinery in Houston for the purpose of returning with a load. Roy Sims was with me. We started on our return trip to Galveston after midnight, and I was very sleepy. Just out of Dickinson I remember an automobile blew its horn. I moved over to let them by. This is all I know before I was in the ditch trying to put out the flames from my clothing. I must have dozed off and hit the culvert because I have caught myself doing that before. It was so late and I was sleepy.
 "`Robert Merrill'".
From the statement referred to, there is sufficient evidence to justify the jury in finding that the act on the part of the driver in going to sleep constituted heedlessness or reckless disregard for the rights of others.
In his written reasons for judgment in this case, Judge Lindsey said:
"Assuming as a fact here that the driver fell asleep while driving, the evidence, in my opinion, falls short of showing gross negligence. He testified that he was not tired; that he remembers getting a little sleepy, but that he didn't think he would go to sleep. Without discussing them in detail, the facts in the cited cases where gross negligence was found differ widely from the facts here. Moreover, in view of the driver's statement made shortly after the accident that he did not know whether he fell asleep, his testimony on the trial that he did fall asleep is far from convincing."
Inasmuch as in our opinion under the law of Texas in order to come within the provisions of the statute the injured guest passenger is required to prove that the act on the part of the driver of a vehicle in going to sleep resulted from his gross action in failing to abstain therefrom, we are in accord with the views of the Trial Judge that the Plaintiff herein has failed to factually prove that the driver went to sleep and, furthermore, that in the event the driver, Glynn, fell asleep and in consequence of which the automobile struck the side of the bridge, same resulted from his gross disregard of circumstances which were sufficient to warn him of the danger of falling asleep. Certainly, the Plaintiff has failed to prove by a preponderance of the evidence the actual cause of the accident and has, at most, succeeded in leaving it to conjecture that the accident resulted because of the driver going to sleep.
The finding of the trial court on questions of fact where it has the opportunity of seeing and observing the witnesses are entitled to great weight. Finding no manifest error in the conclusions as *71 to the factual situation in this case, the judgment rejecting the demand of Plaintiff will be affirmed.
In view of the conclusion reached by the Court, the question of the correctness of the judgment of the Trial Court in sustaining the exception of no cause of action and dismissing the suit as to Southern Farm Bureau Casualty Insurance Company becomes moot.
Judgment affirmed.