ON THE MERITS
The sole issue on the merits is readily acknowledged by learned counsel for appellants to be one of fact, namely, whether or not the stake mentioned in the herein-above quoted portion of the boundary agreement of November 26, 1945, is susceptible of location and identification. Esteemed counsel admits that the boundary agreement in question is binding upon appellants and that if a certain stake relied upon by defendants is, in fact, the marker set down by the parties to the agreement of November 26, 1945, then appellants have no case. In substance, however, counsel argues that the stake relied upon by defendants is a 2" X 2" stake which cannot be considered by the court since it contradicts the terms of the boundary agreement which recites that the parties have driven a ljd>" X I1/2" stake to mark the boundary agreed upon.
Even a casual reading of the here-inabove quoted portion of the boundary agreement between Page and the Smiths reveals that the parties thereto made no attempt to establish their common boundary extra-judicially in compliance with the formalities prescribed by LSA-C.C. Article 833. Instead, said parties by mutual agreement, in the form of an act under private signature, duly acknowledged, and for reciprocal consideration consisting of the resolution of all prior uncertainty with regard to their common boundary, obviated the expense of a survey and fixed the boundary by consent. Such an agreement is neither contra bonos mores, nor against public policy nor interdicted by law. In essence, such a transaction is in the nature of a mutual exchange of lands, the agreement evidencing same becoming a part of the titles to the respective estates.
When the aforesaid agreement was executed in 1945, Joseph H. Page was owner of the 15 acre tract presently owned by plaintiffs, said property being known as the “Hollywood Inn Property” by virtue of there being located thereon an establishment bearing that name. According to the agreement confected between Page and Mr. and Mrs. Smith (then owners of the two arpent tract presently belonging to the Picous), the boundary between these lands was marked by an angle iron set in the ground within the highway right of way perpendicular to the centerline of the highway at a point seventy-five feet (on the Bayou Blue side) from a post supporting a Regal Beer sign which was then standing adjacent to the eastern extremity of the highway right of way at a point approximately 50 to 60 feet from the centerline of the road. It is readily conceded by all concerned that no survey was made at the time and that the marker *414 mentioned in the agreement was actually driven into the ground as recited therein.
All parties to the boundary agreement of November 26, 194S, namely, Joseph H. Page and Mr. and Mrs. Prentice Smith, testified on the trial of this cause. Richard Mayes, who witnessed the agreement, likewise appeared as a witness herein. The remaining witness, Floyd Bourg, died previous to trial.
Mr. and Mrs. Smith and their son-in-law, Richard Mayes, were present when the boundary marker was set in 1945. They testified that upon the location of the boundary becoming a matter of some concern because of plaintiff’s intention to place a rather substantial building near the line, they searched for and found the marker intact in its original position on the shoulder of the highway (approximately 22 feet from the center of the paved surface of the road) after removing about two feet of soil which covered the marker as the result of a highway improvement project undertaken subsequent to the time the stake was set.
Mr. Joseph Page, on the contrary, testified that the marker found by the Smiths is not the same one placed in the ground in 1945. Page further testified that the original marker was located approximately 100 feet north of a culvert which runs under the highway. He also stated that the initial stake was set at about 50 to 60 feet from the center of the roadway in order to be certain that it was not placed within the highway right of way. Page also attempted to disavow the boundary agreement in question by testifying that he signed a blank sheet of paper which was subsequently taken by the Smiths to the Notary Public Blanchard who then typed in the agreement. In this regard the testimony of Page appears patently erroneous in that it is flatly contradicted by the Smiths and Mayes and also appears to be refuted by the evidence as a whole. We deem it to be of considerable significance that whereas Page contends he signed an instrument in blank, no allegation of fraud is made in connection with the boundary agreement, no attack was levelled against it and, moreover, .esteemed counsel for appellants concedes its validity. In view of the foregoing the only effect attributable to Page’s disavowal of the agreement is to cast doubt upon his general credibility.
Appellants’ sole contention is that the trial court erred in finding as a matter of fact that the angle iron discovered by the Smiths was the identical marker alluded to in the boundary agreement. There is in fact a discrepancy in its description which counsel for appellants acknowledges is the sole and only basis of plaintiffs’ suit. The agreement recites that a U/2" X 11/2" angle iron was used as the marker whereas it is conceded by defendants that the angle iron found within the highway right of way measures two inches square.
In substance Mr. Smith testified that prior to execution of the boundary agreement in question he and Page discussed the location of the dividing line between their properties. Page was of the opinion the line was fifty feet beyond or south of a certain Regal Beer sign then situated on the east side of the highway whereas Smith believed the line was approximately 50 feet further south of the point claimed by Page. The parties therefore agreed to adjust the difference by setting the boundary at 75 feet south of the sign although Smith readily acknowledges that at the time he felt Page was giving him approximately 25 feet of land. Be that as it may, there is no question but that the parties agreed upon a location.
After agreeing with Page as to the location of the boundary, Smith engaged the Notary Public who prepared the agreement and therein described the angle iron as measuring U/2" X 1)4" upon the representation of Smith that such a marker would be used. Smith concedes the agreement was drafted two or three days prior to the time the marker was installed. From an acquaintance who had access to a supply of such items, Smith obtained fifteen to twenty angle bars most of which measured 1J4" X I14" but some of which were 2" X 2" in *415 dimension. On a Sunday (two or three days after the agreement was drawn by the notary) Smith selected at random one of the angle irons from a sack or hag in which they were contained and accompanied by Mayes went to the nearby Hollywood Inn and from there proceeded with Page, Mayes and Bourg to walk along the highway to the beer sign. Standing on the edge of the surfaced portion of the highway directly opposite or at a right angle to the beer sign Mayes held the zero end of a steel tape which Smith brought along for the occasion, while the other end of the tape was taken by Page who measured a distance of 75 feet southerly along the edge of the roadway.
The record reveals that at the time the marker was set the shoulders of the highway were extremely narrow being only about two feet in width and then dropping rather sharply into a ditch or canal — especially on the east side of the road. According to Smith, at the time the marker was set the ditch was grown up with weeds and briars and also contained some water. In order for Smith to drive the stake on the eastern highway right of way line he would have had to wade through the mud and water in the large ditch as well as the weeds and briars present and in so doing no doubt soil his clothing. Faced with this situation he elected to set the stake in the highway right of way near the bottom of the incline of the shoulder and as close as he could get to the water. This he did with the assistance of Page upon whom Smith called to stand on the edge of the shoulder and indicate the spot which would be at right angle to the point which Page had measured to be 75 feet from the sign. When Page indicated the proper location Smith then drove the stake into the ground a distance of approximately three feet leaving some seven inches thereof protruding above the ground.
Mr. Mayes, who was present throughout the entire proceeding, substantiated the testimony of Mr. Smith. Mrs. Smith, who arrived upon the scene before the task was completed, testified substantially the same as her husband.
Mr. Page testified that no measurement was taken from the beer sign as related by the Smiths and Mayes. According to Page, the marker was placed SO feet from the center of the highway at a point 100 feet north of a nearby culvert.
A disagreement exists between the parties respecting the events which transpired subsequent to the setting of the marker. The Smiths and Mayes testified that thereafter all concerned went to the Hollywood Inn where the agreement was signed on the bar. Page maintains the document was signed by him in blank before they returned to the bar and that at least one of the witnesses affixed his signature to the document on the fender of an automobile parked nearby.
It is not disputed that subsequent to 1945 the Highway Department on two occasions widened the shoulders of the highway at the point where the marker was placed. Defendants maintain that in so doing the marker was covered with dirt hauled in during the course of these improvement projects.
In late 1955 or 1956, determination of the boundary in question became a matter of importance because plaintiffs then desired to erect a substantial building on their property near the line but sought to make sure the structure did not encroach upon the property of the adjoining owner to the South. Plaintiffs endeavored to find the marker but without success. According to plaintiffs, upon instruction from Smith they searched an area approximately 50 to 60 feet east of the centerline of the highway right of way but could not locate the stake. Smith denies having directed plaintiffs to' location. He stated that plaintiffs had dis-search for the marker in any particular cussed the boundary with him in a very general way and that he informed them a marker existed. Smith further denied having told Duplantis the stake was located east of the highway right of way line but rather *416 told Duplantis it was situated on the shoulder of the road. He also testified that Duplantis told him that Duplantis had searched for the stake east of the highway upon information received from Page to the effect that the stake had been placed beyond the roadside ditch. Plaintiffs then employed a surveyor, J. C. Lovell, who was likewise unable to locate the marker, his failure, no doubt, being partly occasioned by the fact that the beer sign used as a reference point in the 1945 agreement had been removed.
In July, 1957, Mr. and Mrs. Smith obtained permission from the State Highway Department to explore the shoulder of the highway in search of the original marker. On July 10, 1957, Mr. and Mrs. Smith, accompanied by Larry Robichaux, Mrs. Sadie Leveron, a surveyor Bernard Davis, and two negroes, went to the site. After determining the approximate location of the stake from certain landmarks and from a pipe placed by a surveyor Munson (who had previously surveyed plaintiffs’ south boundary line) a spot was selected at which the negroes dug and uncovered the marker. The surveyor Davis, then placed a new two inch angle iron at a 90° angle in line with the original stake at a point off the highway right of way. The new marker thusly set was approximately 22 inches from Mun-son’s boundary marker which will be hereinafter discussed. There appears in evidence twenty photographs depicting the participants in the various stages of the work. The testimony of several of said persons appearing in the record relates the discovery of the marker to certain landmarks and explains in detail the entire proceeding.
Plaintiffs has seized upon the fact the angle iron unearthed and relied upon by defendants measures two inches square rather than 1J4" X U/2" as described in the boundary agreement of 1945. In view of the explanation given by Smith as to the manner in which the iron used was selected as well as certain other testimony hereinafter discussed, the discrepancy is immaterial.
In 1950, one Larry Robichaux purchased from defendant Prentice Smith a lot fronting 100 feet on the east side of Highway 90. Robichaux and his mother, Mrs. Sadie Leveron, testified that when the former purchased the lot from Smith the property sold was identified and marked by measuring from the angle iron on the highway right of way to the corner of Smith’s residence yard. Both Robichaux and Mrs. Leveron further testified that the angle iron uncovered in 1957 was the identical marker which they had seen in 1950.
Plenry T. Lirette and Herman Rogers, called as witnesses by defendants, in essence testified that in 1947, they constructed fences around the properties of Mr. Smith and Mr. Smith’s mother, Mrs. Frances Smith, and that the boundary marker used as a reference point in erecting said fences was the same as that discovered July 10, 1957.
Defendant Prentice Smith corroborated the testimony of Lirette and Rogers and positively identified the marker found July 10, 1957, as being the selfsame stake set down by him in 1945, with the assistance of Page.
Perhaps the most persuasive (and damaging to plaintiffs) testimony with regard to the identity of the marker is that of S. Allen Munson, Civil Engineer. Mr. Munson, an absolutely disinterested witness, testified that in late 1955 or early 1956, he was engaged by plaintiff Elwin Duplantis to survey the boundary line in dispute in this law suit. According to Munson, Elwin Du-plantis showed him what Duplantis thought to be the former location of the beer sign mentioned in the boundary agreement of 1945. Although the sign was no longer in existence Munson found certain holes in the ground which were believed to have been made by the posts which supported the sign in question. Duplantis instructed Mun-son to measure 75 feet from the location of the sign as thusly determined and at said point establish a line at an angle of 90° from the highway. Acting upon said instructions, Munson measured from a point *417 equidistant between the holes (taking this to be the center of the sign) and set a l57j'f galvanized pipe at a point 75 feet from said reference point. The boundary thusly established by Munson is shown to be situated less than two feet distant from the disputed marker. After establishing the boundary as above indicated, Munson ran a line at an angle of 90° to the highway and set four points — the first on the highway right of way line as aforesaid, and the remaining at distances of 300, 700 and 802.65 feet, respectively, from the highway right of way. Munson’s testimony was corroborated in its entirety by that of Norman Bergeron who assisted Munson and acted as instrument man when the survey was made.
Although Elwin Duplantis denied having hired Munson to run the line and further denied having pointed out to Munson the location of the sign, his testimony in this respect is not very convincing. Duplantis explained that he merely engaged Munson to run a line at a 90° angle to the highway so that the building to be erected would be constructed parallel to the boundary line and thus avoid the possibility of encroachment upon adjoining property. He further testified that the stake was placed by Mun-son at the point stated by Smith to be the approximate location of the boundary.
Duplantis’ testimony is flatly contradicted by both Smith and Munson. Smith denied having pointed out the boundary to Duplan-tis and further denied that Duplantis specifically requested him to locate the marker.
Implying that the angle iron found by Smith and his party was not the original boundary monument, but rather a recently installed marker, plaintiff Elwin Duplantis testified that he saw the marker shortly after its discovery and that there was no rust on it: He again saw it the day before the trial and observed rust on the head of the marker which was somewhat flattened by virtue of its having been beaten to drive it into the ground. This testimony is in marked contrast to that of Larry Robichaux, Mrs. Sadie Leveron, Henry Lirette and Herman Rogers hereinabove discussed. In this regard said testimony is also contradicted by testimony of those present when the marker was uncovered to the effect that a plant root was found growing through one of the holes in the angle iron.
We believe the learned trial court correctly resolved the single issue of fact presented by this litigation, namely, whether the stake found July 10, 1957, was the same as that set by the adjoining owners in 1945. It is settled jurisprudence that appellate courts are reluctant to disturb a factual determination of a trial court predicated upon conflicting evidence unless manifest error appears. Pierre v. Galloway, La.App., 96 So.2d 916; Blount v. Blount, La.App., 125 So.2d 66.
Judgment affirmed.