## No. 12,274.

### SUCCESSION OF GEORGES ANDRE PETIT.

The principle resting on national comity that gives to the law of the domicile of the owner extra-territorial effect with respect to his movable property, does not exact that our courts should give effect to the foreign law creating a title to movables subject to the administration of a succession in our courts, when

that title is repugnant to the text and spirit of our law of inheritance, placing as the foreign law does the natural child as an heir on the same footing as the brothers and sisters of the deceased, and when the court is called on to enforce such foreign law to the prejudice of the Louisiana heirs. Story's Conflict of Laws, Secs. 18, 23, 25, 550, 388, 362; 2 An. 599, 603; 11 An. 239; 10 An. 772; 5 N. S. 596; 2 N. S. 93.

APPEAL from the Civil District Court for the Parish of Orleans. *Ellis, J.*

*Henry Chiapella* for Administratrix, Appellee.

*Denègre, Blair & Denègre* for Tutrix of Minor, Appellee.

Argued and submitted February 2, 1897.
Opinion handed down March 1, 1897.
Rehearing refused April 12, 1897.

The opinion of the court was delivered by

MILLER, J. This is an appeal from the judgment dismissing the opposition to the account of the administratix of the succession, asserting the right of the minor, Jean L. O. Petit, as the duly acknowledged natural child of the deceased to one-half of the proceeds of the succession property.

The deceased, George A. Petit, died in France, his domicile for years. By his last will he constituted the mother of the minor Jean L. O. Petit his universal legatee, but the will was annulled by the competent court in France. His legal heirs are his sisters and a brother, two residing here, one in Mississippi and one in France. The minor on whose behalf the opposition is filed was duly acknowledged by the deceased in France as his natural child. The administratrix, in due course of administration, has sold and realized the proceeds of part of the succession property, has exhibited in her account the fund for distribution to the heirs, excluding from any participation in the distribution the natural child of the deceased.

Under the Code, if the deceased, dying intestate, leaves no descendants or ascendants, his legal heirs are his brothers and his sisters, or their descendants. The natural child duly acknowledged is called to the succession of his father only, when he leaves

no descendants, ascendants, collaterals, or surviving wife. Civil Code, Arts. 911 *et seq.* 917, 918. The account proposes that distribution the Code prescribes, when the deceased, as in this case, making no will, that made in France having been annulled, leaves brothers and sisters and no ascendants or descendants.

It is claimed on behalf of the minor that his right to one-half of the property of the succession is fixed by the judgment of the court in France, and it is insisted that judgment is *res judicata.* We find no occasion to deal with the effect of a judgment rendered by the competent tribunal of one country contradictorily with the parties by or against whom the judgment is pleaded in the courts of another country. The suit in France was brought by the heirs at law to set aside the will, on the ground that the universal legatee, the mother of the minor, was interposed for his benefit, to evade the provisions of the Napoleon Code, forbidding testamentary dispositions in favor of natural children, when such dispositions trenched on the portions reserved by that Code for brothers and sisters of the deceased. The under-tutor of the minor joined in that suit, asserting his right and making his mother a party. We understand the French judgment as annulling the will and as withholding any decision in reference to the distribution of the Louisiana property. The material part of the decree is: " Declare nul le legs fait à la dame Bayly, en ce sens que le mineur Petit n'a droit qu'a a la moitié de l'actif de la Succession; débouté la dame Bayly de sa demande en délivrance du dit legs " * * And the court adds: "Attendu que de la succession comprend des biens sis en France et des biens sis à a Louisiane; que les legislations qui régissent les dits biens peuvent être différentes; que le Notaire commis pour le partage prendra tous renseignements et en cas de difficultés donnera son avis avec l'estimation des immeubles et fera soumettre au Tribunal les questions douteuses et litigieuses" * * * Wholly independent of this decree the status of the minor child had been fixed by the acknowledgment in due form by the father. That *status* was not in controversy, but conceded when the heirs at law brought the suit to annul the will. In our appreciation the decree is not the basis of the demand of the minor asserted here, and hence the decree is not *res judicata* in support of his demand in our courts to take one-half of the property of the deceased. He stands before us simply as the natural child of the deceased claiming a distribution accorded to him in France, but which our Code denies to natural children.

The general principle, not of statutory recognition, but enforced by the comity of nations, is that the law of the domicile of the owner should govern his contracts as to personal property and the distribution of that property when he dies.   Hence, it is argued that as the law of France, the domicile of the testator, gives the natural child one-half the property of his father who leaves collateral heirs, that law and not our Code must control the distribution of the movables of the succession in Louisiana, the argument conceding that our law governs the right of inheritance to all immovable property here.   The principle that gives the foreign law operation in any other country, based entirely on international comity, is subject to exceptions.   The personal capacities and disabilities fixed by the law of the domicile of the party, as a general rule, will operate on him in other countries, yet even these personal laws are not enforced by the courts of other countries when that enforcement would prejudice the rights or interests of their citizens.   Again, the foreign law will not be enforced by the courts of another country in aid of a contract made abroad, when the rights of the citizens of the country in which the enforcement is sought would suffer, although the property within that country, the subject of the contract, is movable.   Story, Conflict of Laws, Secs. 23, 25, 550, 386, 362; Olivier vs. Townes, 2 N. S. 93; Saul vs. His Creditors, 5 N. S. 597; Lee vs. Creditors, 2 An. 603.

If these exceptions exist to the operation of the foreign law, on property in another country, it is not easy to appreciate why the foreign law, utterly opposed to the spirit an ı policy of our legislation, should be admitted by our courts to control the distribution to the heirs of the deceased of movable property here, merely because the deceased was domiciled in the country, the laws of which it is proposed to substitute for our own.   In the argument for the natural child, it is urged that our Code recognizes his heirship, and hence the inference is sought to be supported of no difference in the policy of France and Louisiana on that subject.   The difference, in our view, is radical.   Under the Napoleon Code the natural child is placed on a footing of equality as respects the right of inheritance with the brothers and sisters of the deceased. Our Code, on the contrary, excludes the natural child from any inheritable right to the succession of the father, unless his succession would otherwise go to the State, and the Code thus viewing

the natural child, places him under the rubric of the Code of irreg-
ular heirs.   Arts. 757, 912 *et seq*.   If in this case, then, we are to give
effect to the French law, we disregard the spirit and text of the Code·
as well as the public policy, the basis of our law on this subject;  in
thus deviating from our policy and legislation we deny the right of
inheritance our Code confers on two of our citizens included among:
the collateral heirs of the deceased:  we enforce to their prejudice
a title utterly repugnant to our system and derived solely from the·
foreign law and the force given to it, as is claimed by the comity
due from one to another State.   We are not aware of any case in
which international comity has been thus applied.

The types of decisions of the class cited in the briefs in support of
the claim of the natural child are numerous.   The courts of one
country charged with the administration of an estate, the principal
administration being conducted in the courts of another country, the·
domicile of the deceased, will in a spirit of comity direct the trans-
mission of the succession funds to the foreign country for administra-
tion there, but not until the claims of our own citizens are satisfied.·
Debts for many purposes will be deemed to follow the owner and ·be·
controlled by the law of his domicile.   Succession of Alice Packwood,
9 Rob. 443.   In a contest between heirs all foreign our courts will·
ascertain their rights in respect to movable property here by the
standard of the law of their foreign domicile, as was well illustrated
in the leading case of the heirs of Kosciusko.   Ennis vs. Smith, 14·
Howard, 400.   The right of a foreign administrator to control per-
sonal property will be recognized when no prejudice to our citizens·
is operated.   In these classes of cases and others in which there is·
no right asserted affecting our own citizens or repugnant to our law
and public policy, our courts will give effect to the foreign law in
subjecting to its operation movable property here.   To all the cases·
cited on behalf of the natural child we have given attention and we
have endeavored to indicate the difference in principle between that
applied in those cases and that involved in this case.

We are not at liberty to enforce in this case the foreign law,
because, in our view, the comity of States does not exact the rec-
ognition by the courts of one country of the title of an heir based on
the foreign law opposed to our own law and detrimental to our own
citizens, if enforced.   We think that in the discussion of the subject
by the jurists the limit of comity we have indicated finds recogni-

tion. In our own jurisprudence with no direct adjudication on the particular phase presented in this case, we have expressions carrying great significance against admitting the foreign law to interfere with the distribution to heirs our Code establishes, although the property is movable and the owner had his domicile in the foreign country. Thus the husband, who under the common law becomes entitled to the personal property of his wife, or to a part of it, in one case to be found in our reports, endeavored to assert against the heirs under our law his right here, based on the foreign law to movable property of the deceased wife, under administration here. The claim was denied, but the authority of the case is weakened by the view expressed that the title of the husband was not complete under the foreign law. Marcenado vs. Bertoli, 2 An. 980. Marcenado vs. Mordella, 10 An. 772. The tendency of the decision is, however, against the title claimed under the foreign law opposed in that case to the order of heirship our law establishes, but not exhibiting that different and more impressive phase of repugnance to our Code manifest by the foreign law we are called on in this case to enforce. There is the greater reason to deny the operation here of the foreign law.

There is another view. Our Code gives effect to wills made out of the State on movable property within the State. There is no will in this case; that made in France having been annulled. When our courts carry into effect the testament made abroad we execute the will of the deceased, not the foreign law. When there is no will, subject to such modifications as international comity demand, our courts enforce our law in distributing property within our jurisdiction to the heirs of the deceased owner. It is the law, therefore, of Louisiana that must be applied in this case, and that application is made by the judgment before us on this appeal. Civil Code, Article 10,491.

It is therefore ordered, adjudged and decreed that the judgment of the lower court be affirmed with costs.