236 So.2d 216

Bessie JOHNSON

v.

ST. PAUL MERCURY INSURANCE
COMPANY et al.

No. 49732.

March 30, 1970.

Rehearing Denied May 4, 1970.

Love, Rigby, Donovan, Dehan & Love, Robert J. Donovan, Jr., Shreveport, for appellant.

Mayer & Smith, Paul R. Mayer, Shreveport, for appellees.

SUMMERS, Justice.

This tort claim arises out of an automobile accident which occurred on June 11, 1966 in Beebe, Arkansas. On that day Bessie Johnson left Shreveport, Louisiana, as a guest of Harley D. DeMoss in his automobile en route to Waterloo, Iowa, to visit DeMoss' daughter. Bessie Johnson and DeMoss were residents of and domiciled in Shreveport where they intended to return after their visit to Iowa. The automobile owned by DeMoss was garaged at his home in Shreveport, licensed in Louisiana and insured for public liability under a Louisiana contract.

When the parties arrived in the town of Beebe, Arkansas, DeMoss ran into the rear end of an automobile owned by Leon Rutledge of Newport, Arkansas. At the time the automobile was being driven by Rutledge's eighteen year old son. As a result of the collision Bessie Johnson suffered personal injuries and incurred medical expenses. She filed this suit in Caddo Parish, Louisiana, against DeMoss and his public liability insurer, St. Paul Mercury Insurance Company.

Arkansas has a guest statute which requires a showing of wilful negligence on the part of the host before recovery can be had by a guest. The statute reads:

Action by guest prohibited except in case of wilful negligence.—No person transported as a guest in any automotive vehicle upon the public highways or in aircraft being flown in the air, or while upon the ground, shall have a cause of action against the owner or operator of such vehicle, or aircraft, for damage on account of any injury, death or loss occasioned by the operation of such automotive vehicle or aircraft unless such vehicle or aircraft was wilfully and wantonly operated in disregard of the rights of the others. Ark.Stat.Ann., § 75–913.

Louisiana, on the other hand, has no guest statute. Ordinary negligence on the part of the host will warrant recovery by a guest. La.Civil Code art. 2315.

Plaintiff's petition does not charge that DeMoss wilfully and wantonly operated his automobile in disregard of the rights of others, but the petition does charge DeMoss with acts of simple or ordinary negligence. DeMoss denied his negligence and, alternatively, urged the Arkansas Guest Statute in bar of plaintiff's right to recovery. This latter defense was sustained by

the trial court. On appeal to the Second Circuit the judgment was reversed. 218 So.2d 375. We issued certiorari on defendant's application. 253 La. 872, 220 So.2d 457.

The trial court's decision was based upon the theory that the law of Arkansas applied to this tort because the situs of the accident was Arkansas. In adhering to the *lex loci delicti* doctrine which has prevailed in this State, the Court applied the guest statute of Arkansas denying recovery to plaintiff. The Court of Appeal, however, discarded the *lex loci delicti* doctrine and adopted what appears to be a "minimum contacts" theory for the solution of the case. Accordingly, it applied the substantive law of Louisiana whereby the ordinary negligence of DeMoss was sufficient to warrant recovery by the guest passenger. See La.Civil Code art. 2315.

As we understand the case at this point, DeMoss' ordinary negligence is conceded. The principal issue we must resolve is whether to apply the law of Arkansas or Louisiana to what is conceded to be an Arkansas tort.

So far as we can ascertain, this is the first case in the history of the jurisprudence of this State in which a Louisiana court has applied Louisiana law to a foreign tort; this, in spite of urgings to the contrary. Fry v. Lamb Rental Tools, 275 F.Supp. 283 (W.D.La.1967); Doty v. Central Mutual Insurance Company, 186 So.

2d 328 (La.App.1966); Blanchard v. Blanchard, 180 So.2d 564 (La.App.1965) concurring opinion of Judge Tate. What is unique here is that this departure from the settled jurisprudence should be undertaken by an intermediate court. The action involves, at least, a failure by the Second Circuit to recognize its obligation to follow the settled law of this State. For, since the question is not regulated by statute, the law is what this Court has announced it to be.

The 1900 case of Williams v. Pope Mfg. Co., 52 La.Ann. 1417, 27 So. 851, recognized the transitory nature of tort claims and the then established principle universally observed in the United States that in tort cases the law of the place of wrong or where the right accrued governed (*lex loci delicti*). In Matney v. Blue Ribbon, 202 La. 505, 510, 12 So.2d 253, 255 (1943), the proposition was again cogently stated by this Court in these words:

> At the outset, it is well to note that an action in tort is transitory in its nature and may be brought in any jurisdiction in which the wrongdoer is found. * * * It is also firmly imbedded in the jurisprudence of this country that all matters relating to the right of action in tort are governed by the *lex loci delicti*, or the place where the wrong was committed.

Again in Burke v. Massachusetts Bonding & Ins. Co., 209 La. 495, 499, 24 So.2d 875,

*876* (1946), the rule was approved in these words:

> Where the action is brought in one jurisdiction for a tort committed in another the rights and liabilities of the parties are determined by the laws of the place where the wrong is committed and not by the laws of the place where the right of action is asserted.

The rule thus so clearly established and reiterated by this Court has on repeated occasions been followed by the intermediate appellate courts of this State. In several of these cases we have refused certiorari. Sanders v. Atlas Assur. Corp., 156 So. 2d 245 (La.App.1963), cert. denied, 245 La. 461, 158 So.2d 612 (1963); Honeycutt v. Indiana Lumbermen's Mut. Ins. Co., 130 So.2d 770 (La.App.1961), cert. denied; Watkins v. Cupit, 130 So.2d 720 (La.App. 1961); Blount v. Blount, 125 So.2d 66 (La.App.1961), cert. denied; Smith v. Northern Ins. Co. of N. Y., 120 So.2d 309 (La.App.1960), cert. denied; Mondello v. Pastiro, 78 So.2d 64 (La.App.1955); Cone v. Smith, 76 So.2d 46 (La.App.1955), cert. denied; Mock v. Maryland Casualty Co., 6 So.2d 199 (La.App.1942); Polmer v. Polmer, 181 So. 200 (La.App.1938); Surgan v. Parker, 181 So. 86 (La.App.1938). The federal courts of this State have likewise correctly applied the doctrine of *lex loci delicti* in their adjudications involving foreign torts. Fry v. Lamb Rental Tools, Inc., 275 F.Supp. 283 (W.D.La.1967); Totty v. Travelers Insurance Company and J. D. Snee, 200 F.Supp. 34 (E.D.La.1961); Hale v. American Fire and Casualty Company, 81 F.Supp. 273 (W.D.La.1948).

So well established has the rule of law become that in many of the cited cases the principle is conceded by both parties. The rule has had the beneficial effect of certainty and simplicity of application and has done much to promote the expeditious disposition of cases where the problem is presented.

◼ Fundamental and elementary principles recognize that certainty and constancy of the law are indispensable to orderly social intercourse, a sound economic climate and a stable government. Certainty is a supreme value in the civil law system to which we are heirs. Merryman, The Civil Law Tradition 50 (1969). In Louisiana, courts are not bound by the doctrine of *stare decisis,* but there is a recognition in this State of the doctrine of *jurisprudence constante.* Unlike *stare decisis,* this latter doctrine does not contemplate adherence to a principle of law announced and applied on a single occasion in the past.

However, when, by repeated decisions in a long line of cases, a rule of law has been accepted and applied by the courts, these adjudications assume the dignity of *jurisprudence constante*; and the rule of law upon which they are based is entitled to great weight in subsequent decisions.

Keller v. Haas, 209 La. 343, 24 So.2d 610 (1946); Gravier v. Gravier, 200 La. 775, 8 So.2d 697 (1942); Miami Corp. v. State, 186 La. 784, 173 So. 315 (1937); Rubin and Ponder, The Ostrich and the Arbitrator: The Use of Precedent in Arbitration of Labor-Management Disputes, 13 La.L. Rev. 208 (1953).

Thus, while this court has the power to modify and overrule its former decisions, it does not do so unless it is clearly demonstrated that error has occurred and hardship and injustice will attend a continuation of the rule of law. Gravier v. Gravier, *supra.*

*Lex loci delicti* has been uniformly applied in this State on at least three occasions by this Court, ten times by the intermediate appellate courts and in not less than three reported decisions in the Federal District Courts. A rule of law so firmly established should not be abandoned without some compelling reason.

Asserting that the Louisiana courts have never been urged to abandon the *lex loci* doctrine, plaintiff advocates its abolition now. In its place plaintiff would have this Court substitute the "grouping of contracts" theory of liability in tort cases announced in Babcock v. Jackson, 12 N.Y.2d 473, 240 N.Y.S.2d 743, 191 N.E.2d 279 (1963), or the related theory incorporated in the Restatement (Second) of Conflict of Laws. In Babcock the Court noted that "the mechanical formula of the conflicts of

law" had been abandoned in contract cases and decided:

The "center of gravity" or "grouping of contacts" doctrine adopted by this court in conflicts cases involving contracts impresses us as likewise affording the appropriate approach for accommodating the competing interests in tort cases with multi-State contacts. Justice, fairness and "the best practical result" (Swift & Co. v. Bankers Trust Co., 280 N.Y. 135, 141, 191 N.E.2d 992, 995, supra * * *) may best be achieved by giving controlling effect to the law of the jurisdiction which, because of its relationship or contact with the occurrence or the parties has the greatest concern with the specific issue raised in the litigation. 12 N.Y.2d at 481, 240 N.Y.S.2d at 749, 191 N.E.2d at 283.

In the Restatement the rule is stated as follows:

The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, as to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6. Restatement (Second) of Conflict of Laws § 145 (Proposed Official Draft Part II, 1968).

Obviously the rules thus enunciated are anything but clear. Terms such as "center of gravity," "grouping of contacts," "most

significant relationship," "contacts" and "interests" do little to serve as a guide or to establish a rule of law which may be applied with any degree of certainty. The idea, however, has gained attention and some support. See Weintraub, Revolution in the Choice of Law for Torts, 51 A.B.A. J. 441 (1965); Symposium (by leading conflict of law scholars), Comments on Babcock v. Jackson, A Recent Development in Conflict of Laws, 63 Colum.L. Rev. 1212 (1963); Ehrenzweig, The Most Significant Relationship in the Conflicts Law of Torts, 28 Law and Contemp.Prob. 700 (1963); Reese, Conflict of Laws and the Restatement Second, 28 Law and Contemp.Prob. 679 (1963); Rheinstein, The Place of Wrong: A Study in the Method of Case Law, 19 Tul.L.Rev. 4 (Part 1), 165 (Part 2) (1944); Comment, Conflict of Laws in Louisiana: Tort, 39 Tul.L.Rev. 96 (1964).

In addition to the varying pronouncements found in court decisions since the late fifties, when the first departure from *lex loci* occurred, Emery v. Emery, 45 Cal.2d 421, 289 P.2d 218 (1955); Koplik v.

C. P. Trucking Corp., 27 N.J. 1, 141 A.2d 34 (1958) and Haumschild v. Continental Cas. Co., 7 Wis.2d 130, 95 N.W.2d 814 (1959), four theories have been suggested by commentators in recent years for the solution of conflict of tort law cases.[1] These solutions are Morris' "proper law",[2] Currie's "governmental interest",[3] the Second Restatement's "most significant relationship,"[4] and Ehrenzweig's "place where the car is (permanently) garaged."[5]

The "proper law" theory of Morris, in effect, suggests that the existing *lex loci delicti* rule applied to all conflict of tort law cases does not always lead to "socially desirable results". Morris suggests that the search for the proper law involves a "sophisticated inquiry into problems of causation and foreseeability coupled with a balancing of the interest of the states whose law is involved." The suggestion is that each case be decided on an ad hoc basis as the judge deems "proper". Morris' "proper law" theory promotes an unlimited judicial discretion which negates the notion of laws.

1. Baer, Two Approaches to Guest Statutes in the Conflict of Laws; Mechanical Jurisprudence Versus Groping for Contacts, 16 Buffalo L.Rev. 537 (1967).

2. Morris, The Proper Law of a Tort, 64 Harv.L.Rev. 881 (1951).

3. Currie, The Constitution and the Choice of Law: Governmental Interests and the Judicial Function, 26 U.Chi.L.Rev. 9 (1958).

4. Restatement (Second) of Conflict of Laws § 145. (Proposed Official Draft Part II, 1968).

5. Ehrenzweig, Conflict of Laws, at 580 (1962). See also Ehrenzweig, Guest Statutes in the Conflict of Laws—Towards a Theory of Enterprise Liability under Foreseeable and Insurable Laws, 69 Yale L.J. 595 (1960).

The Restatement (Second) states its suggested new rule for cases of conflict of laws in tort in these words:

Section 145.   The General Principle.

(1) The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, as to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6.

(2) Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:

(a) the place where the injury occurred,

(b) the place where the conduct causing the injury occurred,

(c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and

(d) the place where the relationship, if any, between the parties is centered.

These contacts are to be evaluated according to their relative importance with respect to the particular issue.

A close study of the Restatement (Second) notes to this rule leads irresistibly to the conclusion that it gives no rule at all. In the words of Baer:

It does no more than list a few well known contacts and some factors which it feels the courts should consider. It ties all these together by admonishing the court to apply the law of the state which has the most significant relationship with the occurrence and the parties, but seems to recognize that this will be any law that the courts decide to pick. Baer, *supra* n. 1, at 573.

Currie's "governmental interest" analysis unlike Morris' "proper law" and the Second Restatement's "most significant relationship" is not confined to tort law. It is a general approach to all choice of law problems which few, if any, of the commentators would embrace wholeheartedly. Currie's theory suggests that the law of the forum be applied as a matter of course and:

(W)hen a court is asked to apply the law of a foreign state different from the law of the forum, it should enquire into the policies expressed in the respective laws, *and into the circumstances in which it is reasonable for the respective states to assert an interest* in the application of these policies. In making these determinations the court should employ the ordinary process of construction and interpretation. (Emphasis added.) Currie, Comments on Babcock v. Jackson at 1242.

What this theory will lead to in its application is a dogma that states can and do have a logical, rational and legitimate in-

terest only in their own residents. A provincialism repugnant to our federalism would be sure to follow in this field of law under Currie's rules. A state whose conflict of laws rule always serves its own citizens can hardly expect its citizens in the courts of another state to receive any treatment which is inimical to the citizens of that state.

The solution in guest statute cases for Ehrenzweig must be found by considering the interest of the parties in the light of forum policy. This is primarily the interest of the host in procuring liability insurance adequate under the law and the insurer's interest in the calculability of the premium. Thus he would apply the law of the state where the car is garaged, a law which can be anticipated by all concerned.

■ Existence of liability insurance ought not to create a cause of action where none exists otherwise. A policy of insurance protects against claims legally asserted, but does not itself produce liability. Prince v. Prince, 205 Tenn. 451, 326 S.W.2d 908 (1959). Nothing about Ehrenzweig's proposal escapes the criticism aimed at *lex doci delicti*: that it is too rigid and does not provide the flexibility required to meet the justice of each particular case. Ehrenzweig simply substitutes one inflexible rule for another.

The Babcock Court, Morris, the Second Restatement and Currie in their efforts to formulate a rule to take care of all choices of tort law cases, to promote certainty in the law and provide for the justice of the individual case, have devised rules which permit the courts to reach whatever result it wishes. Such rules are in effect no rules at all.

The Babcock doctrine is vague and ill-defined at best—leading to confusion, and at worst manifestly dangerous because it opens wide the door to decisions based on whim or caprice, with after-the-fact fabrication of contact analysis offered for added weight and justification. Note, 20 Rutgers L.Rev. 572 (1966).

It has been predicted that the Babcock decision

* * * will throw the law governing torts into a state of utter confusion, will bring forth a hodge podge of decisions based neither on rhyme nor reason, will breed uncertainties, will encourage forum shopping by the parties, will increase provincialism throughout this federalized country and will allow recovery solely that one might recover. Sparks, Babcock v. Jackson—A Practicing Attorney's Reflections Upon the Opinion and

Its Implications, 31 Ins.C.J. 428 (1964). Even within the same court, the Babcock decision has not led to uniform results as the decision in Dym v. Gordon, 16 N.Y.2d 120, 262 N.Y.S.2d 463, 209 N.E.2d 792

(1965), illustrates. Dym may presage a turnabout. *See* Baer, *supra* n. 1.

■ Of course a forum court is not constitutionally free to apply its own laws to every element of every tort case brought before it. Woodward v. Stewart, 243 A.2d 917 (R.I.1968); Leflar, Constitutional Limits on Free Choice of Law, 28 Law and Contemp.Prob. 706 (1963). In the area of conflict of laws, the Due Process Clause prevents an arbitrary application of a state's jurisprudence to an out of state event. Pearson v. Northeast Airlines, Inc., 309 F.2d 553 at 563 (2nd Cir. 1962).

And the Full Faith and Credit Clause places a restraint upon this proposed judicial law making, which, when considered with the concept of comity between states as intimately associated as Louisiana and Arkansas, makes us pause and hesitate to embrace this somewhat fashionable but free-wheeling tendency. U.S.Const. art. IV, § 1; The Federalist No. 42; Pearson v. Northeast Airlines, Inc., *supra* at 567; John Hancock Mut. Life Ins. Co. v. Yates, 299 U.S. 178, 57 S.Ct. 129, 81 L.Ed. 106 (1936); Loucks v. Standard Oil Co., 224 N.Y. 99, 120 N.E. 198 at 202 (1918); Restatement of Conflict of Laws §§ 384, 391; 16 Am.Jur.2d Conflict of Laws § 7; 21 C. J.S. Courts § 545.

■ Essentially, plaintiff cannot recover in tort unless he has been given by some law a cause of action in tort; and this cause of action can be given only by the law of the place where the tort is committed. That is the place where the injurious event occurs, and the law of that place applies. 2 Beale, Conflict of Laws § 378.1 (1935). For a court to apply its law to events occurring outside its territory is to give them extraterritorial effect. Refusing to apply the law of the place where a tort occurred in deciding a case and insisting on applying the forum law to the foreign event is to give extraterritorial effect to a state's laws. A court might just as well apply a set of facts other than the true facts in the decision of a tort case as to apply a law to the events other than the law of the place where the events occurred. The effect is the same. Story, Conflict of Laws § 38 (8th ed. 1883).

Adoption of the contact doctrines with their attendant built-in inclination to favor the plaintiff, combined with the known fact that plaintiff selects the forum, the assumption is all too clear that plaintiff will select the forum which benefits his claim, as in the case at bar. This places the defendant in an unequal position in the eyes of the law denying him the equal protection of the law. Erie R. R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1948); Dym v. Gordon, 16 N.Y.2d 120, 262 N.Y.S.2d 463, 209 N.E.2d 792 (1965).

Nor do we feel that scholarly or judicial repugnance to guest statutes in itself will

warrant an excursion into a nebulous field where in complex situations each decision will call for an unstable exercise in legal gymnastics. Wessling v. Paris, 417 S.W.2d 259 (Ky.1967). Our research reveals that more than half of the states have guest statutes; and they are supported by policies which those states in the exercise of a proper legislative function deemed worthy to support those enactments.

For instance, in Arkansas the statute under consideration has been defended against an attack that it denied access of an injured guest to the courts for injuries sustained at the hands of a host who was only guilty of ordinary negligence. In Roberson v. Roberson, 193 Ark. 669, 101 S.W.2d 961 (1937), the Supreme Court of Arkansas analyzed the act and concluded that it defined the care due the guest and prescribed the character of proof the guest must make to sustain his action for injury done. Put another way, the Arkansas guest statute fixes the measure of care the host owes the guest. In effect it fixes the reciprocal rights and duties of the host-guest relationship of those who use the highways of Arkansas, a matter clearly within its legislature's prerogative to regulate.

In the Babcock case the Ontario guest statute was said to be designed to protect insurance companies against fraudulent claims brought about by collusion between the guest and host. Babcock v. Jackson, *supra,* 240 N.Y.S.2d at 750, 191 N.E.2d at 284. Colorado's policy underlying its guest statute is threefold: the protection of Colorado drivers and their insurance carriers against fraudulent claims, the prevention of suits by "ungrateful guests," and the priority of injured parties in other cars in the assets of the negligent defendant. Dym v. Gordon, 16 N.Y.2d 120, 262 N.Y.S.2d 463, 209 N.E.2d 792 (1965). *See also* Birmelin v. Gist, 162 Ohio St. 98, 120 N. E.2d 711 (1954); Hasbrook v. Wingate, 152 Ohio St. 50, 87 N.E.2d 87 (1949).

We have not inquired into the policies which underlie all guest statutes, and we need not. It is sufficient that we know that some legitimate policies underlie their enactment. It is contrary to the established process of law reform, therefore, for courts to devise new and untried rules to circumvent these legislative enactments. It is doubtful that the courts can more wisely legislate in this matter than the legislatures of half of the States of the Union.

Other than the certainty which characterizes the *lex loci* rule; its simplicity and ease of application; its adherence to the clear import of the Due Process and Full Faith and Credit Clauses of the Federal Constitution; its regard for the principles of comity so important to a workable federalism, and the restraint it imposes upon

states in the extraterritorial application of their laws; we recognize the added advantage Paul Henrich Neuhaus attributes to the rule:

> * * * (T)he economy of the process of adjudication dictates that the great volume of civil cases be decided according to clear-cut rules without a judicial repetition of the frequently quite involved legislative thought processes; this precludes a weighing of all possible relevant interests * * *. Neuhaus, Legal Certainty Versus Equity in the Conflict of Laws, 28 Law and Contemp.Prob. 795, 805 (1963).

Plaintiff advocates a course here which takes us away from the "clear-cut" rules of *lex loci* and compels acceptance of a doctrine not clearly defined in any respect. Such a change will involve this court in a legislative thought process in each case presented hereafter compelling the court to weigh all relevant interests in each fact situation and devise a rule for the solution of the case.

To make this departure from our settled law we must undertake a threefold process: First, the court must perceive the relevant social policies involved in the change; second, we must develop a rule to replace the rule plaintiff would have us abandon, and the new rule must give adequate and clear expression to the policies involved; and, third, the rule so formulated must be applicable to specific situations. In its present state, the "center of gravity", "grouping of contacts" or related doctrines are in their formative stages and will not lend themselves to a sound declaration of new law.

Other than broad and vague generalizations that changing times, the speed of travel and the need to do justice in the individual case require a departure from *lex loci*, no compelling reasons have been advanced to support a departure from *lex loci*. We take it that the prime objective of the proponents of change is to do justice in the individual case.

Justice naturally is a value which all judges seek and undoubtedly forms the basis of many a decision. * * * But by and large, justice is a slender and treacherous reed. Probably few judges, if any, are sufficiently Solomon-like to know what are the dictates of true justice in the majority of cases. Also justice in the individual case, if it were the one and only value, would be totally disruptive of all rules. And we may have need for such rules, not only as a basis for deciding cases, but also as standards upon which persons can plan their transactions and order their lives. Cheatham and Reese, Choice of the Applicable Law, 52 Colum.L.Rev. 959 (1952).

*See also* Sumner, Choice of Law Rules: Deceased or Revived? 7 U.C.L.A.Law Rev. 1 (1960).

Other states, when presented with this problem, have rejected adoption of the "contacts" theories and favored retention of *lex loci*, their traditional rule of law. *See* Landers v. Landers, 153 Conn. 303, 216 A.2d 183 (1966); White v. King, 244 Md. 348, 223 A.2d 763 (1966); Friday v. Smoot, 211 A.2d 594 (Del.1965); Shaw v. Lee, 258 N.C. 609, 129 S.E.2d 288 (1963).

We are not satisfied that the abolition of *lex loci* is warranted. Accordingly, the judgment of the Court of Appeal is reversed and the judgment of the trial court is reinstated and made the judgment of this Court.

SANDERS, Justice (dissenting).

This conflict of laws litigation presents a crossroad decision for this Court: whether to retain the mechanical rule that the law of the place of the tort governs liability arising from tortious conduct irrespective of the circumstances. The majority has elected to retain it. For reasons especially cogent in the present case, I disagree.

The plaintiff, Bessie Johnson, and the insured, Harley D. DeMoss, are residents of Shreveport, Louisiana. DeMoss owned an automobile, which was licensed, garaged, and insured in Louisiana. While a guest passenger on a trip to Iowa, Bessie Johnson sustained injuries when DeMoss ran into the rear of another vehicle in Arkansas. She filed suit in Louisiana against DeMoss and his insurer for damages.

Arkansas law denies recovery, because a guest statute requires that the vehicle be wilfully and wantonly operated in disregard of the rights of others. Ark.Stat. Ann. Sec. 75–913. Louisiana law grants recovery, because it requires only fault or negligence. LSA–C.C. Art. 2315.

The question presented is whether the Louisiana courts should apply Louisiana law or Arkansas law to the issue of the host's liability to his guest.

The place-of-tort is a judicial rule in Louisiana. It was imported into our Court decisions after the turn of the century. It forms no part of our codes or statutes. Hence, in a strict sense, it is not law, for law is a formal expression of legislative will. LSA–C.C. Art. 1.

In recent years, numerous authorities have conclusively demonstrated that the inflexible rule is unsound. It fails to take into account legitimate governmental interests and the ideals of justice of the forum state. It relies solely upon a circumstance that is purely fortuitous in automobile accident cases: the place of the accident. See, e. g., Leflar, American Conflicts Law, §§ 133–136, pp. 323–333 (1968); Ehrenzweig on Conflict of Laws, § 211, pp. 541–548 (1962); Rheinstein, The Place of Wrong: A study in the Method of Case Law, 19 Tul.L.Rev. 4 (part 1), 165 (part 2) (1944); Comment, Conflict of Laws in Louisiana: Tort, 39 Tul.L.Rev. 96 (1964); Reese, Conflict of Laws and the Restate-

ment Second, 28 Law and Contemporary Problems 679 (1963). Weintraub, Revolution in the Choice of Law for Torts, 51 Am.Bar Assn.Journ. 441 (1965); Currie, Selected Essays on the Conflict of Laws, pp. 165, 183, 188 (1963); Dainow, Conflict of Laws, 25 La.L.Rev. 387–390 (1965).

Several jurisdictions have circumvented the rule by characterizing such actions as being other than tort, based upon some aspect of the case. See, e. g., Levy v. Daniels' U-Drive Auto Renting Co., 108 Conn. 333, 143 A. 163, 61 A.L.R. 846; Haumschild v. Continental Casualty Co., 7 Wis. 2d 130, 95 N.W.2d 814. See also Leflar, American Conflicts Law, supra, § 133, pp. 323–325.

Most courts that have considered the question in recent years have abandoned the place-of-tort as an invariable rule. Lauritzen v. Larsen, 345 U.S. 571, 73 S.Ct. 921, 97 L.Ed. 1254 (1953); Tramontana v. S. A. Empresa De Viacao Aerea Rio Crandense, 121 U.S.App.D.C. 338, 350 F.2d 468 (1965), cert. denied, 383 U.S. 943, 86 S.Ct. 1195, 16 L.Ed.2d 206 (1966); Reich v. Purcell, 67 Cal.2d 551, 63 Cal.Rptr. 31, 432 P.2d 727 (1967); Emery v. Emery, 45 Cal.2d 421, 289 P.2d 218 (1955); Wessling v. Parish, 417 S.W.2d 259 (Ky.1967); Schmidt v. Driscoll Hotel, Inc., 249 Minn. 376, 82 N.W.2d 365 (1957); Clark v. Clark, 107 N.H. 351, 222 A.2d 205 (1966);

Wilson v. Faull, 27 N.J. 105, 141 A.2d 768 (1958); Babcock v. Jackson, 12 N.Y.2d 473, 240 N.Y.S.2d 743, 191 N.E.2d 279, 95 A.L.R.2d 1 (1963); Casey v. Manson Constr. § Eng'r. Co., 247 Or. 274, 428 P.2d 898 (1967); Griffith v. United Air Lines, Inc., 416 Pa. 1, 203 A.2d 796 (1964); Wilcox v. Wilcox, 26 Wis.2d 617, 133 N.W.2d 408 (1965); Heath v. Zellmer, 35 Wis.2d 578, 151 N.W.2d 664 (1967); Mitchell v. Craft (Miss.), 211 So.2d 509 (1968).

On the issue of guest statute application, recent decisions have, with only two exceptions, rejected the rule of place-of-tort. Babcock v. Jackson, supra; Clark v. Clark, supra; Wilcox v. Wilcox, supra; Heath v. Zellmer, supra; Witherspoon v. Salm (Indiana App.) 237 N.E.2d 116 (1968); Mullane v. Stavola, 101 N.J.Super. 184, 243 A. 2d 842 (1968); Dubois v. Siewert, 293 N. Y.S.2d 802 (1968); Woodward v. Stewart, (Rhode Island) 243 A.2d 917 (1968); Fuerste v. Bemis (Iowa), 156 N.W.2d 831 (1968); Kopp v. Rechtzigel, 273 Minn. 441, 141 N.W.2d 526 (1966); Mellk v. Sarahson, 49 N.J. 226, 229 A.2d 625 (1967); Kuchinic v. McCrory, 422 Pa. 620, 222 A. 2d 897 (1966); Macey v. Rozbicki, 18 N. Y.2d 289, 274 N.Y.S.2d 591, 221 N.E.2d 380 (1966); Tooker v. Lopez, 24 N.Y.2d 569, 301 N.Y.S.2d 519, 249 N.E.2d 394 (1969); Kennedy v. Dixon (Missouri) 439 S.W.2d 173 (1969). Contra, White v. King, 244 Md. 348, 223 A.2d 763 (1966);

Friday v. Smoot (Delaware) 211 A.2d 594 (1965).[1]

Despite the foregoing jurisprudence, the majority has based the choice of law here upon the archaic rule. In my opinion, the choice of law should be based on something more substantial. The conflict of law authorities have clearly identified the relevant considerations. Cheatham and Reese, Choice of the Applicable Law, 52 Col.L.Rev. 959 (1952); Yntema, The Objectives of Private International Law, 35 Can.Bar Rev. 721, 734–735 (1957); Cavers, The Choice-of-Law Process, 139–203 (1965); Restatement of Conflict of Laws (Second), Section 6. They may be summarized as predictability of results, maintenance of interstate and international order, simplification of the judicial task, advancement of the forum's governmental interests, and application of the better rule of law. Clark v. Clark, supra; Mitchell v. Craft, supra; Leflar, American Conflicts Law, supra, § 105, p. 245.

Predictability of legal results in advance of an automobile accident is largely irrelevant. Automobile accidents are unplanned. The expectations of the parties as to liability, if they had any, would relate to the law of Louisiana, where the parties were domiciled, the automobile garaged, and the liability insurance policy issued.

Maintenance of interstate orderliness presents no problem here. The sensibilities of neither state will be affected by the choice of law. Interstate travel will also be unaffected.

If simplification of the court's task balances either way, it is on the side of Louisiana law. Courts of this state should be able to apply the fault concept of Article 2315 of the Louisiana Civil Code with greater ease and confidence.

Louisiana's governmental interest is paramount. Both the claimant and the insured are domiciled here. The automobile was garaged here. The public liability insurance was issued here. The trip was to begin and end here. Our state has a strong policy of protecting its citizens from loss by the fault of another. This principle is embodied in Article 2315 of the Louisiana Civil Code, providing:

"Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it."[2]

1. The majority speculates that the decision in Dym v. Gordon, 16 N.Y.2d 120, 262 N.Y.S.2d 463, 209 N.E.2d 792 (1963) may presage a "turnabout" from Babcock v. Jackson, supra. Quite to the contrary, Babcock was recently reaffirmed. See Macey v. Rozbicki, 18 N.Y.2d 289, 274 N.Y.S.2d 591, 221 N.E.2d 380 (1966);

Tooker v. Lopez, 24 N.Y.2d 569, 301 N.Y.S.2d 519, 249 N.E.2d 394 (1969).

2. In substantially the same language, the principle was set forth in Louisiana's first Civil Code, as Article 16 of the Civil Code of 1808. Prior thereto, it was incorporated in the Code Napoleon (1804).

Arkansas has little or no governmental interest in the damage claims of Louisiana residents against each other based on a host-guest relation. Unlike "rules of the road", the factors that bear on the host-guest relationship center in Louisiana.

The policy reflected in guest statutes is to protect hosts from ungrateful guests and to protect liability insurance companies from suits brought by guests in collusion with their hosts. Hence, under this policy, Arkansas is primarily concerned only with suits brought in its own courts affecting hosts, guests, and insurance companies subject to its jurisdiction. See Clark v. Clark, supra.

Finally, we are of the opinion that the Louisiana fault rule is superior to the wilful and wanton rule of the Arkansas Guest Statute. The New Hampshire Supreme Court, speaking through Chief Justice Kenison in Clark v. Clark, supra, demonstrated this quite clearly:

"The automobile guest statutes were enacted in about half the states, in the 1920's and early 1930's, as a result of vigorous pressures by skillful proponents. Legislative persuasion was largely in terms of guest relationships (hitchhikers) and uninsured personal liabilities that are no longer characteristic of our automotive society. Cavers, The Choice of Law Process 297 (1965). The problems of automobile accident law then were not what they are today. New Hampshire never succumbed to this persuasion. No American state has newly adopted a guest statute for many years. Courts of states which did adopt them are today construing them much more narrowly, evidencing their dissatisfaction with them. Pedrick, Taken for a Ride: The Automobile Guest and Assumption of Risk, 22 La.L.Rev. 90 (1961); Comment, the Ohio Guest Statute, 22 Ohio St.L.J. 629 (1961). Though still on the books, they contradict the spirit of the times. Leflar, Choice-Influencing Considerations on Conflicts Law, 41 N.Y.U. L.Rev. 267, 278, 307 (1966). Unless other considerations demand it, we should not go out of our way to enforce such a law of another state as against the better law of our own state. Weintraub, A Method for Solving Conflicts Problems: Torts, 48 Cornell L.Q. 215, 220 (1963)."

See also Heath v. Zellmer, supra.

In my opinion, we should abandon the place-of-tort as an invariable rule and place the choice of law on a sounder basis. The decision of this Court in Webb v. Zurich Insurance Company, 251 La. 558, 557 (n. 18) 205 So.2d 398, 405 (n. 18) (1967) and that of the Third Circuit Court of Appeal in Universal C.I.T. Credit Corporation v. Hulett, 151 So.2d 705 (1963) point the way to a new approach and a just result.

For the reasons assigned, I respectfully dissent.

SANDERS and BARHAM, JJ., are of the opinion a rehearing should be granted.

BARHAM, Justice, is of the further opinion that the Court of Appeal should not have been rebuked for its failure to follow "the settled law of this State". I commend it for its excellent discussion and adjudication thereunder of a Louisiana jurisprudentially created "conflicts" rule which has never been definitively analyzed by this court and which is in fact founded historically upon what was then the universal common law rule of our sister states. That jurisprudential foundation and source is now undergoing reexamination and determination in those common law states, and the prevailing trend is for the change in that rule advocated by the Court of Appeal.