Patricia Ann McDANIEL, Individually,
etc., et al., Plaintiffs-Appellees,

v.

PETROLEUM HELICOPTERS, INC., Pe-
troleum Helicopters De Colombia, S. A.,
Defendants-Appellees-Cross-Appellants,

United Aircraft Corporation, Defendant-
Appellant-Cross-Appellee.

No. 71–1057.

United States Court of Appeals,
Fifth Circuit.

Jan. 24, 1972.

A. R. Christovich, Jr., Christovich &
Kearney, New Orleans, La., for United
Aircraft Corporation, defendant-appel-
lant-cross-appellee.

Jack C. Benjamin, New Orleans, La.,
Paul M. Bernstein, New York City, for
Patricia Ann McDaniel.

C. James Gelpi, Carl J. Schumacher,
Jr., David L. Campbell, New Orleans,
La., for petitioner Helicopters.

Kierr & Gainsburgh, New Orleans,
La., Kreindler & Kreindler, and Paul M.
Bernstein, New York City, of counsel,
for Patricia Ann McDaniel, Individually,
etc., and others, plaintiff-appellee.

Before THORNBERRY, MORGAN
and CLARK, Circuit Judges.

CLARK, Circuit Judge:

This is a diversity jurisdiction wrong-
ful death action in which the plaintiff,
Patricia McDaniel, received a judgment
for 220,000 dollars against the defend-
ant, United Aircraft Corporation, as
damages occasioned by the loss of her
husband, Simeon McDaniel, Jr. Mr.
McDaniel's death occurred as a result of
the crash of a helicopter he was piloting,
on July 19, 1964, in the jungles of Co-

lombia, South America. Petroleum Helicopters De Colombia, S. A., owner of the helicopter in question, and a defendant in the original action, cross-claimed against United, manufacturer of the helicopter, for damages resulting from the craft's destruction, and received a judgment in the amount of 61,750 dollars. The jury did not indicate a specific dollar allocation to any particular damage item within either of these two awards, except to designate that 55,000 dollars of the 220,000 dollar judgment in Mrs. McDaniel's favor was due to her minor child, Gene McDaniel.

United appeals from both judgments against it, complaining that numerous errors occurred in the trial proceedings. Petroleum cross-appeals, solely on the ground that errors below resulted in an inadequate damage award to them. We have carefully considered the alleged specifications of error complained of by the appealing parties, and but for the single point discussed below, find them all to be without merit, and to lack sufficient precedential value to warrant further comment.

The applicability *vel non* of Colombian law raised several difficult issues in this cause. The single possible application of that country's law we deal with here is its special provision that recoverable damages for the loss of love and affection, in a wrongful death action, shall be limited to 2000 pesos, approximately equal to 110 U. S. dollars. The parties were in agreement that: (1) the 2000 peso limitation was indeed the law of Colombia[1]; (2) Louisiana law had no such limitation, and that a federal court sitting in Louisiana should deal with this discrepancy by applying the State of Louisiana's conflict of law rule[2]; and (3) Louisiana's recognition of the rule of lex loci delicto required that Colombian law be applied.[3] Though being fully cognizant that these three steps in the traditional conflict of law approach mandated a limitation upon appellee's possible damage award, the court below concluded that on the facts and circumstances of this particular case, Louisiana's public policy required that Colombian law be disregarded upon this point, and that a Louisiana state court would choose to apply its own rules governing wrongful death recovery. We do not agree.

Predicting how state courts will decide cases is a tricky business, and one whose guardianship we do not relish. However, the situation before us does not put us to the task of making one of those disingenuous Erie calculations where, *e. g.*, a federal court in New York "is to determine what the New York courts would think the California courts would think on an issue about which neither has thought."[4] Rather, we have a case in which we know precisely the content and proper application of the relevant foreign law, and we have at hand a recent decision of the Supreme Court of the forum state which makes what is likely the most unequivocal statement of an unflinching adherence to the rule of lex loci as has been recorded in the so-called "modern" era of conflicts law. Johnson v. St. Paul Mercury Insurance Company, 256 La. 289, 236 So.2d 216 (La.1970). We have only to judge whether *some other* policy of the state—and we do count the fervent embrace of lex loci to be in itself a strong public policy in the state of Louisiana—would be regarded by Louisiana

1. Even were appellee now to object that she does not agree that this is the law of Colombia, we would accept the lower court's determination that it is indeed the law, and proceed accordingly. Fed.R. Civ.P. 44.1; Seguros Tepayec, etc. v. Bostrum, 347 F.2d 168 (5th Cir. 1965).

2. Klaxon Co. v. Stentor Mfg. Co., Inc., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941).

3. Johnson v. St. Paul Mercury Insurance Co., 256 La. 289, 236 So.2d 216 (1970).

4. C. Wright, Law of Federal Courts, § 57, p. 235 (2nd Ed. 1970), quoting Nolan v. Transocean Air Lines, 276 F.2d 280, 281 (2nd Cir. 1960).

courts to be sufficiently compelling to displace the otherwise applicable foreign law.

■ Though Louisiana is firmly entrenched in the lex loci camp, it still recognizes the general rule that "state courts will not enforce the laws of other states that are repugnant to their own or are contrary to equity or good morals." Smith v. Globe Indemnity Co., 243 So.2d 882, 889 (La.App.1971). However, situations where Louisiana courts have actually applied that rule in order to override the dictates of controlling foreign law are rare.[5] There have been none since the Johnson decision, none concerning wrongful death, and none which concerned policies and interests similar to that involved in Mrs. McDaniel's effort to be free to collect unlimited damages for loss of love and affection.

■ We think the most significant indication of Louisiana's policy interest in wrongful death recovery situations appeared in the Johnson case itself. In that case,[6] chastising a lower court for attempting to apply some of the untried, "new-fangled" conflict of law theories, the Supreme Court refused to apply its own negligence law within the area of automobile accidents, but chose rather to apply the stricter guest statute of the state of Arkansas. Two residents of Louisiana, Bessie Johnson and Harley DeMoss, both domiciled in Louisiana, were traveling together through Arkansas enroute to Iowa in an automobile that was licensed, garaged and insured under contract in the state of Louisiana. A mishap occurred in Arkansas in which the driver, DeMoss, negligently drove into the rear of another car, thereby injuring Johnson. Since the jury found that DeMoss was guilty of ordinary neg-

ligence—sufficient under Louisiana law to warrant relief—but not wanton and wilful misconduct—requisite under the Arkansas guest statute—Johnson was denied recovery in the Louisiana courts.

We are convinced that the public policy interests—if they were to be given recognition in either a wrongful death or guest statute situation—were stronger in Johnson than in the case at bar. In Johnson, the protection of Louisiana citizens and the regulation of their conduct was involved. Furthermore, the enforcement of Louisiana's adherence to the common law of negligence, and the efficacy of its refusal to favor, by means of a guest statute, driver hosts and insurers were at stake. As Justice Sander said in his dissent in Johnson, 236 So.2d at 225:

> Our state has a strong policy of protecting its citizens from loss by the fault of another. This principle is embodied in Article 2315 of the Louisiana Civil Code providing:
>
> > "Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it."

Thus, Johnson has all the earmarks of that sort of situation where Louisiana could find—as it must if it is to disregard foreign law that "the foreign law is repugnant to the established principles of good morals or natural justice of the forum state, or that its application will be injurious to the interests of its own citizens." Smith, supra, 243 So.2d at 889. Nevertheless, Louisiana rejected public policy arguments, as did the state of Texas in two similar wrongful death cases, Marmon v. Mustang Aviation, Inc., 416 S.W.2d 58, 430 S.W.2d 182 (Tex.1968), and Francis v. Herrin Transportation Co., 423 S.W.2d 610, 432

---

5. Brinson v. Brinson, 233 La. 417, 96 So.2d 653 (1957) ; Moore v. Burdine, 174 So. 279 (La.App.1937) ; Citizens' Bank v. Hibernia Bank & Trust Co., 19 La.App. 461, 140 So. 705 (1932) ; Succession of Petit, 49 La.Ann. 625, 21 So. 717 (La. 1897).

6. For some helpful commentary on the background and implications of the Johnson case, see Couch, Choice-of-Law, Guest Statutes, and the Louisiana Supreme Court: Six Judges in Search of a Rulebook, 45 Tul.L.Rev. 100 (1970) ; 16 Loyola L.Rev. 151 (1970).

S.W.2d 710 (Tex.1968)[7], and chose to adhere to the predictability and reliability of the lex loci rule. We are persuaded that it would do so again in the case at bar.

■ The circumstances of the present case, indeed, present none of the cogent arguments, nor persuasive state interests present in the "typical" public policy case.[8] Mrs. McDaniel was not a citizen of the state of Louisiana; the rejection of the Colombian rule would do little or nothing to help Louisiana regulate conduct either within or without its borders; there was no need to protect a state citizen from an excessive award, or to preserve the estate of a non-resident for possible claims by residents; the state itself had no financial interests at stake, and there was no indication that forum-shopping was threatened.[9] Moreover, the tort sued upon was a statutorily-created one, thus presenting a classic case for the application of lex loci, on the theory that since the law of the state or country where the tort occurred created the right to sue thereon, it alone should define the scope of that right.

The federal courts, and particularly the Fifth Circuit, have expressed great reluctance to upset a state's choice of law. Gaston v. Walker, 400 F.2d 671 (5th Cir. 1968); Ideal Structures Corp. v. Levine Huntsville Development Corp., 396 F.2d 917 (5th Cir. 1968). Since *Johnson*, the trial and appellate courts within this Circuit have abandoned any effort (albeit often with a gratuitous note of regret) to apply any law save that which the rule of lex loci would direct in suits brought initially in Louisiana courts. Lester v. Aetna Life Insurance Company, 433 F.2d 884 (5th Cir. 1970); Franklin v. Texas International Petroleum Corp., 324 F.Supp. 808 (W.D. La.1971); Pendleton v. Aetna Life Insurance Co., 320 F.Supp. 425 (E.D.La. 1970). We repeat, finally, a series of statements the State of Louisiana has made, through the *Johnson* court, that are of unmistakable import to the case at bar:

> So far as we can ascertain, this is the first case in the history of the jurisprudence of this State in which a Louisiana court has applied Louisiana law to a foreign tort; this, in spite of urgings to the contrary. *Johnson, supra*, 236 So.2d at 217. (citations omitted)

> \* \* \* \* \* \*

> The rule [lex loci] has had the beneficial effect of certainty and simplicity of application and has done much to promote the expeditious disposition of cases where the problem is presented. *Id.*, at 218.

> \* \* \* \* \* \*

> A state whose conflict of laws rule always serves its own citizens can hardly expect its citizens in the courts of another state to receive any treatment which is inimical to the citizens of that state. *Id.*, at 221.

> \* \* \* \* \* \*

> Also justice in the individual case, if it were the one and only value, would be totally disruptive of all rules.[10] *Id.*, at 223.

> \* \* \* \* \* \*

The case must be returned to the district court for trial limited to the issue of damages due Mrs. McDaniel, and the jury must be instructed that it is limited, as Colombian law requires, to awarding the U. S. dollar equivalent of 2000 pesos for the loss of love and affection.

7. A comprehensive discussion of recent developments in Texas law in regards to lex loci, public policy, and wrongful death appears at 22 Baylor L.Rev. 205 (1970).

8. *See generally*, Paulsen & Sovern, "Public Policy" in the Conflict of Laws, 56 Colum. L.Rev. 969 (1956).

9. *See* 5 Ga.St.Bar J. 508, 512 and cases cited there.

10. Citing Cheatham and Reese, Choice of the Applicable Law, 52 Colum.L.Rev. 959 (1952).

In all other respects the actions of the trial court were free of reversible error. The judgment in favor of Petroleum is affirmed on direct and cross appeal.

Affirmed in part and, in part, reversed and remanded with directions.